**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:10-cv-00156-MHS-CMC |
| ENERGY FUTURE HOLDINGS | ) | |
| CORPORATION and LUMINANT | ) | |
| GENERATION COMPANY LLC, | ) | **Hearing Requested** |
| | ) | |
| *Defendants*. | ) | |

---

**REPLY IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)
BY DEFENDANTS ENERGY FUTURE HOLDINGS CORP.
AND LUMINANT GENERATION COMPANY LLC**

---

December 10, 2012

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................................................. iii

**ARGUMENT IN REPLY** ...................................................................................................1

I.      Sierra Club's Opacity Claim is Moot Because of a Change in the *Federal* Permit
Requirements for Martin Lake Plant.........................................................................1

II.     Sierra Club's Complaint Does Not Allege—by Name or Otherwise—an
Individual Member with a Particularized Injury.....................................................4

III.    Sierra Club's Heat Input Claim Has No Basis in Law........................................6

IV.    Sierra Club Did Not Provide Adequate Pre-Suit Notice....................................9

**CONCLUSION** ................................................................................................................10

**LIST OF EXHIBITS**......................................................................................................12

# **TABLE OF AUTHORITIES**

## **Cases**

*BCCA Appeal Group v. EPA*, 355 F.3d 817 (5th Cir. 2003) ..........................................3

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285 (5th Cir. 2004) .....................6

*Cent. & Sw. Servs., Inc. v. EPA*, 220 F.3d 683 (5th Cir. 2000) ......................................6

*CleanCoalition v. TXU Power*, No. 6:06-cv-0355 (W.D. Tex. May 21, 2007) ..................................................................................................................3

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794 (9th Cir. 2009) ..................................................................................................10

*Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995) ...............................................................6

*Epps v. Fowler*, 351 S.W.3d 862 (Tex. 2011) ................................................................3

*Hancock County Board of Supervisors*, Nos. 11-60446, 11-60676, 2012 WL 3792129 (5th Cir. Aug. 31, 2012)...........................................................5, 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................4, 5

*Luminant Generation Co. LLC v. EPA*, No. 10-60934, 2012 WL 4841615 (5th Cir. Oct. 12, 2012)........................................................................................2

*McEvoy v. IEI Barge Servs., Inc.*, 622 F.3d 671 (7th Cir. 2010)....................................9

*Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928 (8th Cir. 2012).........................5

*Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012) ........................................................................................................5

*NPCA v. TVA*, 502 F.3d 1316 (11th Cir. 2007) ............................................................10

*Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212 (5th Cir. 2001) .............................................4

*Pub. Citizen, Inc. v. EPA*, 343 F.3d 449 (5th Cir. 2003) ................................................3

*Public Citizen v. American Electric Power Co.*, No. 05-39, 2006 WL 3813762 (E.D. Tex. Dec. 27, 2006)......................................................................9

*Sawyer v. Whitley*, 945 F.2d 812 (5th Cir. 1991)...........................................................1

*Sierra Club v. TVA*, 592 F. Supp. 2d 1357 (N.D. Ala. 2009) .........................................1

*St. Bernard Citizens for Envtl. Quality v. Chalmette Ref., L.L.C.*, 399 F. Supp. 2d 726 (E.D. La. 2005) .....................................................................2

*Tex. Campaign for the Env't v. Lower Colo. River Authority*, No. 11-791, 2012 WL 1067211 (S.D. Tex. Mar. 28, 2012) ..........................................4

*Train v. Natural Res. Def. Council, Inc.*, 421 U.S. 60 (1975) ........................3

*WildEarth Guardians v. Pub. Serv. Col.*, 690 F.3d 1174 (10th Cir. 2012)................1, 5

## Statutes

42 U.S.C. § 7409(b)(1) ......................................................................................6

42 U.S.C. § 7604(a)(1)........................................................................................7

42 U.S.C. § 7604(f)(4) ........................................................................................9

## Federal Regulations

40 C.F.R. § 52.2270(c).......................................................................................2

40 C.F.R. § 54.3(b) .........................................................................................10

## Federal Register

74 Fed. Reg. 58,688 (Nov. 13, 2009).................................................................6

67 Fed. Reg. 58,697 (Sept. 18, 2002) ................................................................2

66 Fed. Reg. 63,318 (Dec. 6, 2001) ...................................................................3

## State Regulations

30 Tex. Admin. Code § 116.116(a)(1)........................................................6, 7, 8

30 Tex. Admin. Code § 116.116(b) ....................................................................7

30 Tex. Admin. Code § 116.116(b)(1) ...........................................................7, 8

30 Tex. Admin. Code § 116.116(b)(1)(C) ...................................................6, 7, 8

30 Tex. Admin. Code § 116.116(b)(2) ................................................................2

30 Tex. Admin. Code § 122.217(a) ....................................................................3

## State Register

23 Tex. Reg.6973 (July 3, 1998).........................................................................8

**<u>Rules</u>**

Fed. R. App. P. 32.1 ........................................................................................................5

5th Cir. R. 47.5.4 ...........................................................................................................5

## ARGUMENT IN REPLY

Sierra Club's complaint should be dismissed.  Its opacity claim is moot because the emissions it complains about are now authorized by a new federally enforceable permit amendment.  Its only defense to its failure to plead standing with specificity is an unpublished, nonbinding decision that, in any case, does not apply.  Its heat input claim is no claim at all because it is based on a regulation that does not apply and alleged "representations" from a permit application in 1985 that has since been superseded.  And even now it cannot identify the individual opacity violations it allegedly gave notice of, nor is it possible to discern them from the information Sierra Club did provide.

**I.**    **Sierra Club's Opacity Claim is Moot Because of a Change in the *Federal* Permit Requirements for Martin Lake Plant**

Sierra Club's response confirms that its opacity claim must be dismissed so long as "subsequent regulatory action by TCEQ"—specifically, a permit amendment issued December 16, 2011—is "federally enforceable."  Doc. 77 at 21–22.  On this point, the law could not be clearer: the permit amendment became enforceable *as a matter of federal law* when it was issued by TCEQ.  Accordingly, Sierra Club's opacity claim in this federal lawsuit is moot.[1]

Sierra Club is correct that "federal law controls."  *Id*. at 22.  But it is wrong that the permit amendment—which authorizes the emissions Sierra Club complains about[2]—is not

---

[1] *See WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1186–88 (10th Cir. 2012) (claim was moot because "the regulatory environment has changed" and defendant was "no longer [] subject to the [regulatory] provisions that WildEarth alleges were violated in this case"); *Sierra Club v. TVA*, 592 F. Supp. 2d 1357, 1376–77 (N.D. Ala. 2009) (dismissing Sierra Club lawsuit over past opacity events because plant was in compliance with its *current* permit— "A case seeking injunctive relief based on conduct that has become lawful due to a change in the law is rendered moot by the change in law."); *Sawyer v. Whitley*, 945 F.2d 812, 814 n.1 (5th Cir. 1991) (change in law rendered claims moot).

[2] As explained by TCEQ, the permit amendment applies to planned maintenance, startup, and shutdown ("MSS") events (as defined by the permit), and other MSS activities "will remain

federally enforceable.    The permit amendment was issued by TCEQ pursuant to federally approved regulations and is, without question, federally enforceable.    Specifically, the permit amendment was issued by TCEQ under its permitting authority in 30 Texas Administrative Code § 116.116(b)(2), which expressly authorizes "permit amendments."    Doc. 72-4 at 2.[3]    That provision was approved by the U.S. Environmental Protection Agency ("EPA") in 2002 and is a part of the *federally enforceable* Texas State Implementation Plan ("SIP").   67 Fed. Reg. 58,697, 58,701 (Sept. 18, 2002) (approving relevant subsections of 30 Tex. Admin. Code § 116.116).   As the Fifth Circuit recently explained, "[o]nce approved by the EPA as meeting the requirements of the Act, the SIP, or the approved portion thereof, is incorporated by reference into the Code of *Federal* Regulations."  *Luminant Generation Co. LLC v. EPA*, 699 F.3d 427, 433 (5th Cir. 2012) (emphasis added) (rehearing petitions pending).    Indeed, the relevant portions of this permit amendment provision are listed in the Code of Federal Regulations as part of the federally enforceable Texas SIP.[4]  *See* 40 C.F.R. § 52.2270(c) (including § 116.116(b)(2) in Texas SIP). As even Sierra Club concedes, once a regulation is part of an EPA-approved SIP, "it has the force and effect of federal law."  Doc. 77 at 22 (internal quotation omitted).

Thus, the permit amendment was *not* "unilateral state regulatory action," as Sierra Club wrongly contends.  *Id.*   The permit amendment was part of the Clean Air Act's "cooperative

---

authorized by other permits, permits by rule or under the *de minimis* rule."   Exec. Dir.'s Resp. to Mot. to Overturn at 1 n.2, *In re Four Air Quality Permit Applications from Luminant Generation Co.*, TCEQ Dkt. Nos. 2012-0066-AIR, et al. (TCEQ Feb. 10, 2012) (Ex. 1).

[3] Contrary to Sierra Club's assertion, Doc. 77 at 23, § 101.222(h)–(j) is *not* the source of TCEQ's authority to amend the permit, but only contains a schedule for phasing out affirmative defenses.   The parties disagree over application of the defenses, but they are not at issue in this motion to dismiss.   Doc. 72 at 2 n.6.

[4] Thus, the cases cited by Sierra Club involving *unapproved* rules do not apply here.   *See* Doc. 77 at 22.   For instance, in *St. Bernard Citizens v. Chalmette Refining*, the court refused to enforce the new rule in federal court "[b]ecause there is no evidence that Rule AQ240E has been approved by the EPA."   399 F. Supp. 2d 726, 734 (E.D. La. 2005).   The opposite is true here.

federalism," under which *States* (not EPA or the Sierra Club) establish the emission limits for individual facilities pursuant to EPA-approved regulations.   *See Train v. Natural Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975) ("[S]o long as the [NAAQS are met], *the State is at liberty to adopt whatever mix* of emission limitations it deems best suited to its particular situation.") (emphasis added); *BCCA Appeal Group v. EPA*, 355 F.3d 817, 822 (5th Cir. 2003) ("[T]he states have broad authority to determine the methods and particular control strategies[.]").   Because the permit amendment was authorized by Texas's EPA-approved SIP, it was enforceable as a matter of federal law when issued and unquestionably applies in this case.[5]

Moreover, to the extent Sierra Club had concerns about this permit amendment or believed it contradicted some other part of Texas's SIP, those concerns were properly addressed during the permitting process.   Sierra Club, in fact, sought administrative and judicial review of the permit amendment raising the same complaints it raises here.   But TCEQ denied its administrative challenge, Ex. 1, ***and Sierra Club later voluntarily dismissed its judicial challenge with prejudice***, Doc. 72-5.[6]   Sierra Club cannot now end-run that permitting process by styling what "is essentially a collateral attack on the Texas permitting process" as a "federal CAA cause of action" seeking penalties for emissions that are now authorized.   *CleanCoalition*

---

[5] Further, on December 9, 2011, Luminant applied to expressly include these MSS provisions in Martin Lake's Title V operating permit.  Ex. 2.  Pursuant to federally enforceable regulations, Luminant's application authorizes it to operate, as a matter of federal law, pursuant to the revised MSS terms before the final Title V permit amendment is issued by TCEQ.  30 Tex. Admin. Code § 122.217(a); *see also* 66 Fed. Reg. 63,318 (Dec. 6, 2001) (EPA approval of § 122.217(a)); *Pub. Citizen, Inc. v. EPA*, 343 F.3d 449, 463 (5th Cir. 2003) (upholding EPA's approval).  Thus, if there was any doubt the permit amendment is federally enforceable, it was resolved with this Title V submission.

[6] Under Texas law, a nonsuit with prejudice is a final judgment on the merits.  *See Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011) ("As the Fifth Circuit has observed, a dismissal or nonsuit with prejudice is 'tantamount to a judgment on the merits.'") (quoting *Dean v. Riser*, 240 F.3d 505, 509 (5th Cir. 2001)).

3

*v. TXU Power*, No. 6:06-cv-0355, Order at 25–26 (W.D. Tex. May 21, 2007) (dismissing citizen

suit in light of state permitting process), *aff'd on other grounds*, 536 F.3d 469 (5th Cir. 2008).

## II.    Sierra Club's Complaint Does Not Allege—by Name or Otherwise—an Individual Member with a Particularized Injury

Sierra Club maintains that it need not have "named names" to show standing.  Doc. 77 at

10–12.    Instead, it claims to have established Article III standing simply by making general

allegations about "potential" harm to the "interests" of unspecified "members."  *Id*. at 12, 14 n.8.

This extreme legal position[7] is driven, apparently, by the fact that just months ago Sierra Club's

lawyers were still searching for individual members to support its lawsuit.  In fact, over a year

and a half *after* this case was filed, Sierra Club's lawyers were actively soliciting residents near

Martin Lake to *join* Sierra Club so they could furnish litigation declarations.  *See* Doc. 78-2

(letter from Elena Saxonhouse to Louin Brooks making a "special offer of membership" and

soliciting "a declaration . . . for use in Sierra Club's litigation against Luminant").[8]

The  law  does  not  support  Sierra  Club's  shoot-first-and-ask-questions-later  litigation

tactics.  Controlling precedent—both from the U.S. Supreme Court and the Fifth Circuit—holds

that an association like Sierra Club only has standing if its complaint alleges that one of its

*individual* members has suffered a *particularized*, concrete injury in fact caused by the conduct

alleged in the complaint.[9]  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Pub.*

---

[7] Usually an organization like Sierra Club *will* "name names" in its complaint, and its lawyers here do so in other cases.  *See, e.g.*, *Tex. Campaign for the Env't v. Lower Colo. River Authority*, No. 11-791, 2012 WL 1067211, at *8–9 (S.D. Tex. Mar. 28, 2012) (reviewing allegations *in the complaint* filed by Sierra Club's counsel here about named member, Ms. Maggie Rivers); *see also* Ex. 3 ¶ 12 (complaint naming Ms. Rivers individually).

[8] This letter was produced by Sierra Club with its initial disclosures in this case and verified by declaration of Sierra Club's counsel filed with the Court.  Doc. 78-3 ¶ 6.

[9] Moreover, the Supreme Court has specifically rejected the legal theory, put forth by Sierra Club here (called "probabilistic standing"), Doc. 77 at 14 n.8, that an organization demonstrates standing "[where,] accepting the organization's self-description of the activities of

*Citizen, Inc. v. Bomer*, 274 F.3d 212, 218–19 (5th Cir. 2001) ("[P]articularized means that the injury must affect the plaintiff in a *personal and individual* way.") (emphasis added) (internal quotation omitted). Sierra Club repeatedly suggests that at the pleading stage, general allegations of standing should be presumed to embrace the specific facts necessary to prove them. Doc. 77 at 10, 12–13. But the case law it cites predates the Supreme Court's tightening of the Rule 12(b)(6) standard. Post-*Iqbal* and *Twombly*, "the complaint must allege sufficient facts plausibly establishing each element of the standing inquiry." *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012); *see also Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 n.5 (8th Cir. 2012) (concluding that *Iqbal* limits *Lujan*).[10]

Further, Sierra Club's reliance on *Hancock County Board of Supervisors*, Nos. 11-60446, 11-60676, 2012 WL 3792129 (5th Cir. Aug. 31, 2012), is wholly misplaced. The Fifth Circuit designated its decision in *Hancock County* as non-binding authority, so it has no precedential value here. *Id.* at *1; Fed. R. App. P. 32.1; 5th Cir. R. 47.5.4. But even if it were precedent, *Hancock County* is inapposite. It was a voting rights case, and, as the Court there noted, "[i]t is settled, and the parties agree, that a voter from a district that is overpopulated and under-represented suffers an injury-in-fact." *Hancock Cnty. Bd. of Supervisors*, 2012 WL 3792129, at *4. Because every voter in such a district necessarily suffers an injury, the association could adequately plead standing by simply alleging its members lived in such a district. *Id.* Here,

---

its members, there is a statistical probability that some of those members are threatened with concrete injury."[9] *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497–99 (2009) (holding that "[the] requirement of *naming* the affected members has never been dispensed with in light of statistical probabilities" that some members might have been harmed) (emphasis added).

[10] Apparently now aware of its pleading deficiency, Sierra Club's brief asserts that the complaint "alleges that *certain* of its members live, work, and/or recreate near the Martin Lake plant." Doc. 77 at 12 (emphasis added). **Not so**. The complaint does not identify—by name or otherwise—"certain" members that are harmed in a particular way different from other members or the public at large. *See WildEarth*, 690 F.3d at 1187–88 ("[A] general interest common to all members of the public does not satisfy Article III.") (internal quotation omitted).

there is no "settled" and "agreed" presumption concerning the alleged injury.  Particularized facts are required to show harm to specific individuals from intermittent and unpredictable emission events over a period of years.  Thus, it is not enough for Sierra Club to allege that some unspecified members allegedly "live, work, and/or recreate near the Martin Lake plant."  Simply put, *Hancock County* and this case are apples and oranges.

Finally, although Sierra Club concedes—as it must—that a post-complaint affidavit cannot cure pleading deficiencies, it nonetheless attempts to use one.  Doc. 77 at 14 & n.7.  But the affidavit falls short.  Mr. Wilton Adams says he is "*concerned* that the Martin Lake power plant has had a negative impact on [his] health."  Doc. 77-2 ¶ 5 (emphasis added).  "Concerns" do not support standing.  As the Fifth Circuit has explained (in rejecting Sierra Club's standing in another environmental case), "the plaintiff's subjective apprehensions" are not relevant to the standing inquiry.  *Cent. & Sw. Servs., Inc. v. EPA*, 220 F.3d 683, 701–02 (5th Cir. 2000).  Mr. Adams's subjective speculation cannot change the fact that EPA has determined that the air quality around Martin Lake meets federal air quality standards that "protect the public health."  42 U.S.C. § 7409(b)(1); *see also* 74 Fed. Reg. 58,688, 58,764–65 (Nov. 13, 2009); Doc. 43-1.

## III.   Sierra Club's Heat Input Claim Has No Basis in Law

Sierra Club fails to state a viable heat input claim.[11]  Sierra Club concedes that none of Martin Lake's permits contains any limitation on Martin Lake's hourly heat input.  Doc. 77 at 27 (conceding that a "8,530 mmBtu heat input limit . . . is not a limit found in the permits for the Martin Lake plant").  Instead, Sierra Club relies solely on § 116.116(a)(1) and (b)(1)(C) of Title

---

[11]  Contrary to Sierra Club's contention, the threshold question of whether it has pled a viable heat input claim is properly addressed now.  *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (in deciding a motion to dismiss, the Court may consider any documents that "are referred to in the plaintiff's complaint and are central to [plaintiff's] claim"); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) ("Federal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss.").

30 of the  Texas Administrative Code, arguing that those regulations created an enforceable heat input limit in 1985 that survived through subsequent permit amendments, none of which (including the most recent) imposed any heat input limit.  *Id*. at 26–27.  There are at least three independent reasons that Sierra Club's heat input claim is deficient.[12]

The first is that the statements made in 1985 were not a "condition upon which" Martin Lake's *current* permit was issued.  Doc. 72 at 28–29.  The plant's current air permit was issued in 2004.  Doc. 72 at 8.   The only representations made in connection with the operative permit were that "8,530 MMBtu/hour is a *representative* value [of] the *annual* average hourly heat input" and was "not [] considered an operating limit."  Doc. 72 at 28 (emphasis added).  Thus, as Sierra Club concedes, heat input was only used "as a multiplier to establish mass-based permit limits for particulate matter, sulfur dioxide, and other pollutants."  Doc. 77 at 25.  But Sierra Club does not allege that any of these actual limitations that TCEQ *did include* in Martin Lake's permit have ever been violated.  What are enforceable under the Clean Act Air's citizen suit provision are "emissions standards" and "limitations," not "multipliers" used "to establish" standards and limitations.  *Id*.; 42 U.S.C. § 7604(a)(1).[13]

Second, § 116.116(a)(1) and (b)(1)(C) do not sweep as broadly as Sierra Club contends. Section 116.116(a)(1) generally provides that the "conditions upon which a permit [is] issued" include "representations with regard to construction plans and operation procedures in an application for a permit."  30 Texas Admin. Code § 116.116(a)(1).  However, § 116.116(b)(1)

---

[12] Notably, the permitting provision relied on by Sierra Club for its heat input argument is the very same provision that authorizes the permit amendment that moots Sierra Club's opacity claim (§ 116.116(b)), as discussed above.  If it applies to Sierra Club's heat input claim, it also applies to and moots its opacity claim.  Sierra Club can't have it both ways.

[13] TCEQ knows how to include enforceable heat input limits in an air permit when it considers such limits to be a condition upon which the permit is issued, and it has done so in a permit for another of Luminant's units.  Ex. 4 (permit for Sandow plant Unit 4).

qualifies this general provision: a permit holder is prohibited from "vary[ing] from any representation or permit condition" *only if* the variance will cause "(A) a change in the method of control of emissions; (B) a change in the character of the emissions; or (C) an increase in the emission rate of any air contaminant." *Id*. § 116.116(b)(1).  Sierra Club's argument rests *entirely* on the bald assertion that subsection (C) is met here because, it claims in its response, higher heat input "will *necessarily* result in 'an increase in the emission rate of any air contaminant.'"  Doc. 77 at 27 (emphasis added).  But it offers no authority to support this proposition, and it points to no factual allegations in the complaint that would establish that higher heat input "necessarily" caused an increase in the emission rate at Martin Lake during the time period covered by the complaint.  *Id*.   In fact, the allegations in Sierra Club's complaint establish precisely the opposite—namely, that the causal connection between higher heat input and increased emission rates is *contingent* on "other operating parameters [being held] constant."  Doc. 1 ¶ 27.  Nowhere does the complaint allege that Martin Lake's operating parameters were, in fact, held constant over the 27 years since the statement at issue was made, and nowhere does it allege that the emission rate at the plant did, in fact, increase (and for which pollutants).  *See*, *e.g.*, Doc. 1 ¶¶ 27–29, 40–43.  Thus, as a matter of law, Sierra Club's complaint does not meet the plain terms of § 116.116(a)(1) and (b)(1)(C) and fails to state a claim for a violation of those provisions.[14]

Third, even if somehow incorporated into the current permit, the statements about heat input on which Sierra Club relies are too imprecise to be judicially enforceable.  On this point,

---

[14] This provision does not apply for the additional reason that the statements about typical heat input did not involve "construction plans" or "operation procedures."  As Sierra Club concedes, the heat input figures were "multipliers" used by TCEQ to calculate the actual emission limits that were included in the permit.  Doc. 77 at 25.  The history of § 116.116(a)(1) shows that TCEQ intended "construction plans" or "operation procedures" to have narrow meanings.  *See* 23 Tex. Reg. 6973, 6979–80 (July 3, 1998) ("It was not the commission's intent to broaden the scope of representations that become conditions upon which permits, special permits, or special exemptions are issued . . . .").

Sierra Club *completely ignores* Judge Folsom's decision in *Public Citizen v. American Electric Power Co.*, No. 05-39, 2006 WL 3813762 (E.D. Tex. Dec. 27, 2006), and the Seventh Circuit's decision in *McEvoy v. IEI Barge Services, Inc.*, 622 F.3d 671 (7th Cir. 2010), both of which illustrate why the 1985 letter about heat input was too indefinite to qualify as a "standard or limitation" enforceable in a citizen suit.   In *Public Citizen*, Judge Folsom found "a reasonable inference that *only* where the permit uses the language 'shall not exceed' does the permit set an enforceable 'emission standard or limitation.'"   2006 WL 3813762, at *2 (emphasis added).   As Defendants' motion explained, the statements Sierra Club relies on about "typical" heat input are not formulated as "not to exceed" limits.  Doc. 72 at 26–29.   And the Seventh Circuit in *McEvoy* addressed the very provision Sierra Club relies on here—42 U.S.C. § 7604(f)(4)—and confirmed that even under this "catchall," the plaintiff must identify ***specific*** "judicially enforceable standards or limitations."  622 F.3d at 675, 677–78.  Sierra Club's silence on this point is telling. Statements made in 1985 in connection with Martin Lake's permit application did not create an enforceable heat input limit in 1985, and they do not create one now.   The lack of judicially enforceable heat input limit is a third, standalone basis for dismissal of the heat input claim.

## IV.     Sierra Club Did Not Provide Adequate Pre-Suit Notice

Sierra Club contends that it gave Defendants the required statutory notice of each alleged "*individual* exceedance of Martin Lake's opacity limit by date, time, and unit" because it "attached" Martin Lake's quarterly emission reports to its notice letter, even though it did not identify what subset of reported events it was challenging.  Doc. 77 at 17 (emphasis added).  But even now, Sierra Club cannot, or will not, identify even a single date for one of the "individual" 10,220 periods that it claims to have given notice of (likely because it does not even know

itself[15]).  Sierra Club's notice thus fails to meet the minimum standards.  *See* 40 C.F.R. § 54.3(b) (recipient must be able to identify the "the date or dates of such violation"); *NPCA v. TVA*, 502 F.3d 1316, 1328–229 (11th Cir. 2007) (same).

Sierra Club suggests that Defendants can cure the deficient notice by somehow discerning which reported events Sierra Club intended to sue over, and it claims to have given Defendants "reasonable specificity" to do so.  Doc. 77 at 18–20.  But the burden of providing adequate pre-suit notice of its claims (including the date of alleged violations) is on Sierra Club—Defendants are "not required to play a guessing game" about the allegations being leveled against them; there must be "a true notice that tells a target precisely what it allegedly did wrong, and when."  *See Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 801 (9th Cir. 2009).  Here, *Sierra Club* has randomly selected which reported events to include in and which to exclude from its notice letter and failed to disclose any replicable methodology by which it did so.  The notion that Defendants are "in a better position" to evaluate which events it is being sued over, Doc. 77 at 20, is absurd.

## CONCLUSION

For these reasons, the Court should dismiss all of Plaintiff's claims in their entirety.

---

[15] Sierra Club claims to have determined which events to include in its notice by applying the exemption in 30 Texas Administrative Code § 111.111.  Doc. 77 at 19.  In fact, however, Sierra Club *randomly* excluded "one six-minute opacity exceedance per hour, *regardless of the reason for the event*."  Doc. 72-7 at 3 (emphasis added).  Because Sierra Club nowhere explains *which* individual events it included, Defendants cannot respond specifically to the allegations against them.

Respectfully submitted,

/s/ P. Stephen Gidiere III
Counsel for Defendants

**Counsel for Defendants Energy Future Holdings Corp. and Luminant Generation Company LLC:**

William B. Dawson
SBN 05606300
wdawson@gibsondunn.com
Russell H. Falconer
SBN 24069695
rfalconer@gibsondunn.com
2100 McKinney Avenue
Suite 1100
Dallas, Texas  75201-6912
Telephone:214.698.3100
Facsimile: 214.571.2900

P. Stephen Gidiere, III
SBN 24077984
sgidiere@balch.com
Balch & Bingham LLP
Suite 1500
1901 Sixth Ave. North
Birmingham, Alabama 35203
Telephone:205.226.8735
Facsimile: 205.488.5694

Otis W. Carroll, Jr.
SBN 03895700
otiscarroll@icklaw.com
Ireland Carroll & Kelley, P.C.
601 S. Broadway, Suite 500
Tyler, Texas 75703
Telephone:903.561.1600
Facsimile: 903.581.1071

Daniel J. Kelly
SBN 24041229
dan.kelly@energyfutureholdings.com
Associate General Counsel
Energy Future Holdings Corp.
1601 Bryan Street, 43rd Floor
Dallas, Texas 75201
Telephone:214.812.7182
Facsimile: 214.812.6075

## LIST OF EXHIBITS

Exhibit 1    Exec. Dir.'s Resp. to Mot. to Overturn, *In re Four Air Quality Permit Applications from Luminant Generation Co.*, TCEQ Dkt. Nos. 2012-0066-AIR, et al. (TCEQ Feb. 10, 2012)

Exhibit 2    Luminant's Minor Revision Application for Federal Operating Permit No. O53, Martin Lake Steam Electric Station, RN102583093 (Dec. 9, 2011)

Exhibit 3    First Amended Complaint, *Tex. Campaign for the Env't v. Lower Colo. River Authority*, No. 11-791, 2012 WL 1067211 (S.D. Tex. Mar. 28, 2012), ECF No. 14

Exhibit 4    TCEQ Air Permit No. 4980 (Feb. 21, 2005)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing motion was served by ECF on the 10th day of December, 2012, on counsel of record for Plaintiff.

<u>/s/ P. Stephen Gidiere III          </u>
Counsel for Defendants