**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| SIERRA CLUB, | ) |
|        Plaintiff, | ) |
|   v. | ) Case No.: 5:10-cv-00156-MHS-CMC |
| ENERGY FUTURE HOLDINGS CORPORATION and LUMINANT GENERATION COMPANY, LLC | ) |
|        Defendants. | ) |

**PLAINTIFF SIERRA CLUB'S SURREPLY IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

December 20, 2012

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    Sierra Club's Opacity Claim Is Not Moot ................................................................ 1

    II.    Sierra Club Satisfies All Standing Requirements .................................................... 5

    III.    Sierra Club Provided Adequate Pre-Suit Notice ..................................................... 7

    IV.    The Complaint States a Viable Heat Input Claim .................................................... 8

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 5, 6

*Cent. & Sw. Servs., Inc. v. U.S. Envtl. Prot. Agency*,
   220 F.3d 683 (5th Cir. 2000) ................................................................................................... 7

*CleanCOALition v. TXU Power*,
   No. 6:06-cv-0355-WSS, slip op. (W.D. Tex. May 21, 2007) .................................................. 3

*Colony Ins. Co. v. Peachtree Constr., Ltd.*,
   647 F.3d 248 (5th Cir. 2011) ................................................................................................... 9

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*,
   566 F.3d 794 (9th Cir. 2009) ................................................................................................... 8

*Hancock County Board of Supervisors v. Ruhr*,
   Nos. 11-60446, 11-60676, 2012 WL 3792129 (5th Cir. Aug. 31, 2012) ................................. 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992). Dkt. 79 at 4-5 .................................................................................... 5, 6

*Luminant Generation Co. v. U.S. Envtl. Prot. Agency*,
   699 F.3d 427 (5th Cir. 2012) ................................................................................................... 4

*McEvoy v. IEI Barge Services, Inc.*,
   622 F.3d 671 (7th Cir. 2010) ................................................................................................. 10

*Miller v. Redwood Toxicology Lab., Inc.*,
   688 F.3d 928 (8th Cir. 2012) ................................................................................................... 6

*Nat'l Parks Conservation Ass'n. v. Tenn. Valley Auth.*,
   502 F.3d 1316 (11th Cir. 2007) ............................................................................................... 8

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012) ................................................................................................... 6

*Public Citizen v. American Electric Power Co.*,
   No. 5:05-cv-39-DF, 2006 WL 3813762 (E.D. Tex. Dec. 27, 2006) ...................................... 10

*San Francisco Baykeeper, Inc. v. Tosco Corp.*,
   309 F.3d 1153 (9th Cir. 2002) ................................................................................................. 8

*Sierra Club v. Sandy Creek Energy Assocs.*,
   627 F.3d 134 (5th Cir. 2010) ................................................................................. 3

*St. Bernard Citizens for Envtl. Quality v. Chalmette Ref.*,
   399 F. Supp. 2d 726 (E.D. La. 2005) ................................................................. 2, 3

**STATUTES**

42 U.S.C. § 7604 ............................................................................................................. 3

**REGULATIONS**

40 C.F.R. § 52.2270(c) ............................................................................................... 2, 3

40 C.F.R. § 52.2273(e) ............................................................................................... 2, 3

40 C.F.R. § 54.3(b) ......................................................................................................... 8

30 Tex. Admin. Code § 111.111(a)(1)(E) ...................................................................... 8

30 Tex. Admin. Code § 116.116(a)(1) ........................................................................... 9

30 Tex. Admin. Code § 116.116(b)(2) ........................................................................... 2

30 Tex. Admin. Code § 122.217 ..................................................................................... 3

**FEDERAL REGISTER**

75 Fed. Reg. 68,989 ................................................................................................... 2, 4

# INTRODUCTION

Luminant has not presented, and cannot present, any legitimate argument for dismissing Sierra Club's claims. This Court has jurisdiction over violations of limits on opacity that are part of the federal plan to address air pollution. Those limits existed at all times of Luminant's alleged violations and remain in place. The excess emissions beyond those limits injure, and continue to injure, Sierra Club members; Sierra Club has clearly alleged that harm in the Complaint. Nothing Luminant or the State of Texas has done subsequent to that filing has affected the emission limits the company has violated, the Court's ability to offer relief, or the excessive pollution that is at the heart of this case.

# ARGUMENT

## I. SIERRA CLUB'S OPACITY CLAIM IS NOT MOOT

Sierra Club alleges that Luminant repeatedly violated the opacity limits found in the federally approved State Implementation Plan (SIP). Compl. ¶ 35. Luminant claims that the December 2011 amendment to Luminant's Permit No. 933, which purported to do away with such limits during planned maintenance, startup, and shutdown (MSS), "became enforceable as a matter of federal law when it was issued by [the Texas Commission on Environmental Quality (TCEQ)]." Dkt. 79 at 1. Thus, Luminant argues that the State is able to exempt Luminant from federal law by revising a permit through a state rule that the U.S. Environmental Protection Agency (EPA) has rejected. Courts have repeatedly rejected this type of argument. *See* Dkt. 77 at 22-24 (foreclosing attempts by state agencies to amend federally-approved standards and pollution limits absent EPA approval). It is the federally *approved* provisions of the Texas SIP

that continue to control.  The inconsistent state law MSS provisions that EPA expressly

*disapproved*[1] cannot be used as a subterfuge to escape this federal enforcement action.

In support of its argument, Luminant relies on the federally approved 30 Tex. Admin. Code section 116.116(b)(2).  Dkt. 79 at 2.  However, section 116.116(b)(2) merely describes the procedure for seeking permit amendments—no more and no less:

> Any person who requests permit amendments must receive prior approval by the executive director or the commission. Applications must be submitted with a completed Form PI-1 and are subject to the requirements of § 116.111 of this title (relating to General Application).

Federal approval of a regulatory provision describing the *procedure* for seeking permit amendments in no way constitutes a de facto federal approval of each and every *substantive* permit amendment TCEQ elects to process.[2]  Thus, this provision does not distinguish *St. Bernard Citizens for Envtl. Quality v. Chalmette Ref.*, 399 F. Supp. 2d 726 (E.D. La. 2005).  *See* Dkt. 79 at 2 n.4.  Just as the court in *St. Bernard* found "no evidence" that the rule at issue had been "approved by the EPA," 399 F. Supp. 2d at 734, neither has EPA approved the state's

---

[1] *See* 40 C.F.R. § 52.2270(c) ("The SIP does not include 101.222(h), 101.222 (i), and 101.222 (j)."); 40 C.F.R. § 52.2273(e) (disapproving Texas SIP revision submittal for sections 101.222(h)-(j)); Approval and Promulgation of Implementation Plans; Texas; Excess Emissions During MSS and Malfunction Activities, 75 Fed. Reg. 68,989, 68,991 (Nov. 10, 2010) ("Section 101.222(j) concerns the processing of permit applications referenced in 101.222(h), and provides the Executive Director with the authority to process, review, and permit unauthorized emissions from planned maintenance, startup, or shutdown activities. . . .[W]e are disapproving section 101.222(j)."); *id.* at 68,998.

[2] There is no dispute that Luminant sought and obtained the permit amendment pursuant to TCEQ's MSS rules that have not been approved by EPA.  *See* Excerpt from Cover Letter and Application for Amendment to Permit No. 933 for Incorporation of Planned MSS Activities (Nov. 3, 2010) (attached as Ex. 1).  The cover letter accompanying the MSS permit application states: "Luminant Power is submitting this permit amendment application in accordance with the deadline specified in 30 TAC §101.222(h)(l)(D)."  In the "Background and Purpose" Section Luminant elaborates: "The purpose of this application is to request an amendment to TCEQ Permit No. 933 to incorporate certain MSS activities performed at [Martin Lake]. . . . Luminant submits this application to address the 30 TAC §101.222(h)(1)(D) requirement for a permit application for MSS activities."  Ex. 1, Permit Application, at 1-1 to 1-2.

blanket exemption of Luminant's opacity violations, and the state permit amendment therefore carries "no legal weight" in this litigation. *Id.* On the contrary, EPA has *disapproved* the state law MSS provisions of Permit No. 933. *See* 40 C.F.R. § 52.2270(c); *id.* § 52.2273(e). Because the opacity limits of the Texas SIP remain applicable to the plant, Sierra Club's opacity claim is not moot.[3]

Luminant also argues in passing that Sierra Club's concerns should have been addressed, if at all, in the state permitting process amending Permit No. 933. Dkt. 79 at 3-4. However, the availability of state permit proceedings has no bearing on the availability of relief in federal court when SIP provisions are violated. *See* 42 U.S.C. § 7604 ("The district courts *shall* have jurisdiction . . . to enforce such an emission standard or limitation. . . ." (emphasis added)). Luminant has put forth no legal support for its suggestion that Sierra Club's dismissal of a completely different lawsuit[4] could bar Sierra Club's claims here, drawing as its sole support for this argument *dicta* from an unpublished opinion out of the Western District of Texas. *See CleanCOALition v. TXU Power*, No. 6:06-cv-0355-WSS, slip op. at 23-26 (W.D. Tex. May 21, 2007) (discussing *Burford* abstention as an alternative reason for dismissal following the determination to dismiss on several other grounds); *see also Sierra Club v. Sandy Creek Energy*

---

[3] For the same reason, Luminant cannot prevail on its argument—raised for the first time in a footnote within its reply brief—that a polluter may unilaterally change its federal emission limits by merely *applying* for a revised Title V permit. Dkt. 79 at 3 n.5. TCEQ has not yet issued a revised permit, and EPA has not yet had an opportunity to comment on, much less approve, the permit. Also, in relying on 30 Tex. Admin. Code section 122.217(a), pertaining to "minor" permit revisions only, Luminant fails to provide any explanation of how the revisions it seeks may qualify as minor. Indeed, any such finding would be wholly inconsistent with the weight Luminant ascribes to the permits in this litigation. Neither does Luminant explain how it can comply with the requirements of 30 Tex. Admin. Code section 122.217(a), including "all applicable requirements," *id.* § 122.217(a)(1)(A); *see also id.* § 122.217(b), when the revision it seeks directly conflicts with the applicable federal requirements governing this case.

[4] In the state court appeal, Sierra Club alleged that the TCEQ's issuance of the MSS amendment violated *state law* by failing to allow any opportunity for public notice and comment. Thus, the federal question in this case was not at issue in that state court action against the TCEQ.

*Assocs.*, 627 F.3d 134, 144 (5th Cir. 2010) (noting that *Burford* abstention was inappropriate in CAA case in part because "no state cause of action is involved in a federal CAA citizen suit").

Finally, even if the MSS provisions of amended Permit No. 933 did govern—which they do not—Luminant could not prevail on its motion to dismiss Sierra Club's opacity claim. The permit amendment authorizes opacity exceedances during a subset of *planned* MSS events only. Permit No. 933's authorization is confined to the planned MSS activities "listed in Attachment A, Attachment B, or the MAERT attached to [that] permit"—and then only "when the permit holder complies with the MSS duration limitations and other applicable work practices" listed in the permit. Amended Permit No. 933 (Dec. 16, 2011), Special Conditions 8-9 (attached as Ex. 4 to Dkt. 72). Nothing suggests that Luminant's exceedances all fall within this subset.

To be clear, exceedances during unplanned MSS events remain illegal, and the fact-intensive affirmative defense for such violations pertains to civil penalties only, not liability and injunctive relief. *See Luminant Generation Co. v. U.S. Envtl. Prot. Agency*, 699 F.3d 427, 440 (5th Cir. 2012) ("[E]ven if . . . the violator establishes the applicability of the approved affirmative defense, injunctive relief is still available."); 75 Fed. Reg. 68,989, 68,992 ("EPA [has] adopted an interpretation of the [CAA] that would allow sources to assert an affirmative defense to periods of excess emissions during [MSS] in an enforcement action for penalties, though not in an action for injunctive relief.").

Luminant's own Exceedance Reports, which the company submits to TCEQ and certifies as accurate, and upon which Sierra Club bases its opacity claims, demonstrate that many of the listed exceedances cannot qualify as planned events covered by the MSS permit. For example (emphasis added):

4

- "Expedited shutdown to repair Front WW tube 290, elev. 529.  Secondary **leak**, HRH Assy #129, tube 15. . . . Expedited maintenance to repair BTL."[5]
- "Expedited maintenance to repair boiler tube leaks"[6]
- "Expedited shutdown.  The unit **tripped**.  Caused by 'A' PA fan motor **failure**.  Unit was immediately restarted and had to operate at reduced load until PA fan motor could be repaired."[7]
- "Shutdown/Digital control system **malfunction**. . . . Expedited shutdown after unit trip due to loss of waterwall temperature control signal."[8]
- "Expedited shutdown to find and repair **leaking** condenser tubes"[9]

Luminant cannot fairly argue that shutdowns of the coal-fired boiler to "repair" a leak or because "the unit tripped" qualify as planned events.  Exceedances of opacity limits due to unplanned events are not covered by the MSS permit amendment (which only authorizes "planned" MSS activities).  To the extent that Luminant may claim an affirmative defense as to penalties for some unplanned exceedances, Luminant has yet to meet that heavy burden.  Moreover, even if Luminant meets that heavy burden to avoid a penalty, unplanned exceedances remain subject to injunctive relief.  Thus, Luminant's alleged permit amendment for planned MSS events does not moot Sierra Club's opacity claim.

## II.     SIERRA CLUB SATISFIES ALL STANDING REQUIREMENTS

Sierra Club has satisfied all standing requirements, and Luminant cannot show otherwise.  Luminant argues that general standing allegations made at the pleading stage should no longer be presumed to include the specific facts necessary to support the claim because—claims Luminant—the Supreme Court's holdings in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), changed the familiar standard announced in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Dkt. 79 at 4-5.  In support of this argument,

---

[5] Emission Report, 1st Quarter 2007 at 4 (attached as Ex. 5 to Dkt. 77).
[6] Emission Report, 1st Quarter 2007 at 10 (attached as Ex. 5 to Dkt. 77).
[7] Emission Report, 4th Quarter 2007 at 3 (attached as Ex. 8 to Dkt. 77).
[8] Emission Report, 4th Quarter 2007 at 9 (attached as Ex. 8 to Dkt. 77).
[9] Emission Report, 1st Quarter 2008 at 8 (attached as Ex. 9 to Dkt. 77).

5

Luminant cites *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) and *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 n.5 (8th Cir. 2012). Dkt. 79 at 5.[10]  But both cases cite favorably to the very language in *Lujan* that Luminant attempts to discount: "general factual allegations of injury resulting from the defendant's conduct may suffice. . . ." *Lujan*, 504 U.S. at 561.  Rather than suggest that general factual allegations no longer suffice post-*Iqbal* and *Twombly*, each opinion simply references those cases to add that a complaint must include "some 'well-pleaded factual allegations,'" *Miller*, 688 F.3d at 934 n.5, and "plausibly" establish standing, *Kivalina*, 696 F.3d at 867.  Sierra Club's Complaint does both.  *See* Dkt. 77 at 12-13; Compl. ¶ 10; *see also id.* ¶¶ 1-2, 9, 24-25, 27, 30.

Luminant's attempt to distinguish *Hancock County Board of Supervisors v. Ruhr*, Nos. 11-60446, 11-60676, 2012 WL 3792129 (5th Cir. Aug. 31, 2012), is equally flawed.  Luminant attempts to distinguish *Hancock County* as a voting rights case, where parties agreed that all voters from overpopulated, under-represented districts suffer an injury-in-fact and where consequently plaintiffs may plead standing "by simply alleging its members lived in such a district."  Dkt. 79 at 5.  Luminant complains that, unlike plaintiffs in *Hancock County*, in order to plead standing here, Sierra Club must do more than allege that some members live, work, and/or recreate near the Martin Lake plant.  *Id.* at 5-6.  Sierra Club has done so.  *See* Compl. ¶ 10 (further alleging that members living, working, and recreating near the plant are exposed to Martin Lake emissions and listing a number of injuries suffered as a result).

---

[10] Notably, Luminant cites a concurring opinion in *Native Vill. of Kivalina*, 696 F.3d at 867—though Luminant declines to identify it as such—and a footnote in Miller, 688 F.3d at 934 n.5 containing the explicit disclaimer that the court "[did] not base [its] dismissal of the action on this basis."  Dkt. 79 at 5.

Finally, Luminant argues that the "concerns" of Sierra Club's declarant, Wilton Adams, cannot support standing.[11] Dkt. 79 at 6 (citing *Cent. & Sw. Servs., Inc. v. U.S. Envtl. Prot. Agency*, 220 F.3d 683, 701-02 (5th Cir. 2000). In *Central and South West Services*, the Fifth Circuit rejected "the plaintiff's subjective apprehensions," not because they were "concerns," but because they were highly "speculative" and

> predicated upon the occurrence of a string of future hypotheticals-that road construction will occur in proximity to the Edwards aquifer, that the construction crews will use PCB bulk product waste in the roadbed, that PCBs will leach from the roadbed, and that those PCB's will leach and contaminate aquifers or waterways. Nothing in the Carman and Sinclair affidavits suggest that any of these predicate events are likely to occur.

220 F.3d at 701. Here, in contrast, Mr. Adams' concerns are immediate and concrete. Mr. Adams runs a business one-half mile from the Martin Lake plant, sees smoke from its stacks, finds soot deposited on his property, and suffers physical ailments of a type linked to particulate matter pollution (which, as the Complaint explains, is itself tied to the opacity of emissions). *See* Adams Decl. (attached as Ex. 1 to Dkt. 77); Dkt. 77 at 14-16.

### III.  SIERRA CLUB PROVIDED ADEQUATE PRE-SUIT NOTICE

Luminant's arguments on pre-suit notice are equally unavailing. As Luminant must concede, Dkt. 72 at 18-19, Sierra Club provided notice of each and every exceedance of Martin Lake's 20% opacity limit between July 2006 and April 2008 *by date, time, and unit*, *see* Dkt. 77, Exs. 3-9. In electing to prosecute less than the full suite of Luminant's violations—an approach that saves time and resources by removing the exemption's applicability from contention—Sierra Club did not deprive Luminant of proper notice. *See* Dkt. 79 at 9; Dkt. 77 at 17-19. Sierra Club specifically informed Luminant of the many occasions on which the Martin Lake plant exceeded

---

[11] As a threshold matter, motions to dismiss may be decided by reference to the pleadings alone; standing declarations are not required at this stage. Furthermore, Luminant's attack on the Adams Declaration raises factual disputes more properly addressed on summary judgment.

7

its opacity limits and demonstrated that, even accounting for the section 111.111(a)(1)(E) exemption, more than *ten thousand* violations remained. Moreover, the premise that Luminant is unaware when employees were engaged in the "cleaning of a firebox or the building of a new fire, soot blowing, equipment changes, ash removal, [or the] rapping of precipitators," *see* 30 Tex. Admin. Code § 111.111(a)(1)(E), is not credible. *Cf. San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158-59 (9th Cir. 2002) ("Tosco is obviously in a better position than BayKeeper to identify the exact dates, or additional dates, of its own ship loading. . . . Given the knowledge that Tosco already had, BayKeeper's letter was specific enough. . . . ").

By giving notice of each and every exceedance of Martin Lake's 20% opacity limit between July 2006 and April 2008 by date, time, and unit, Sierra Club provided notice of Luminant's opacity violations in far more detail than EPA regulations require. *See* 40 C.F.R. § 54.3(b). Luminant's citation to cases addressing wildly dissimilar notice letters does not suggest otherwise. *See Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 802-03 (9th Cir. 2009) (finding notice inadequate where citizens *failed entirely* to mention claims under a particular section of the Clean Water Act); *Nat'l Parks Conservation Ass'n. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1321, 1329-30 (11th Cir. 2007) (affirming dismissal of claim for improper notice where "notice letter lacked specificity [because] it broadly alleged nearly 20 years' worth of daily violations of nearly all of the potentially applicable regulations, when in fact the New Source Performance Standards violations ultimately alleged in the complaint were confined to one pollutant").

**IV.   THE COMPLAINT STATES A VIABLE HEAT INPUT CLAIM**

Luminant urges this Court to find Sierra Club's heat input claim deficient for three reasons, none of which are persuasive. First, Luminant asserts that its long history of

representing an 8,530 mmBtu/hr heat input limit is irrelevant and that only its 2003 attempt to disavow its representation (and the consequences of it) should be considered. Dkt. 79 at 7. However, Luminant's self-serving statements do not change the fact that it initially represented a maximum heat input value and that TCEQ relied on that value.

In any case, Luminant's attempt to dispute the factual allegations of the Complaint is improper in the context of a motion to dismiss where courts "liberally construe the complaint in favor of the plaintiff and accept all well-pleaded factual allegations as true." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). The Complaint alleges that Luminant represented a maximum heat input value in its application to the Texas Air Control Board (TCEQ's predecessor), the state agency relied on that value—and continues to rely on that value—in evaluating Martin Lake's air permits and in setting other permit limits. Under the terms of the Texas SIP and General Condition 1 of Permit No. 933, Sierra Club has properly alleged that the representation is a condition upon which Martin Lake's permits were originally granted and that Luminant is now violating that condition. *See* Compl. ¶¶ 27-28.

Second, Luminant argues that a representation as to heat input cannot constitute a permit term or condition because 1) it is not a "representation[] with regard to an . . . operation procedure" and 2) even if it were, varying from the 8,530 mmBtu/hr representation would not "increase [] the emission rate of any air contaminant." Dkt. 79 at 7-8 (citing 30 Tex. Admin. Code § 116.116(a)(1), (b)(1)). Both statements are untrue, and Sierra Club has sufficiently pled the same. First, heat input measures a boiler's rate of coal combustion. The determination to add a certain amount of coal to a boiler at a certain rate is a fundamental plant operation parameter. *See* Compl. ¶ 27. Second, Sierra Club has pled sufficient factual allegations to establish that an increase in heat input would result in an increase in air contaminant emission

9

rates. *See* Compl. ¶ 27 (indicating that heat input is directly related to a boiler's rate of combustion, that it is correlated to the amount of pollution a boiler emits and that "higher heat input, if other operating parameters are constant, results in more pollution").

Finally, Luminant contends that its statements on heat input are "too imprecise to be judicially enforceable." Dkt. 79 at 8.  In this regard, Luminant's reliance on *McEvoy v. IEI Barge Services, Inc.*, 622 F.3d 671 (7th Cir. 2010), is misplaced.  In contrast to a maximum heat input of 8,530 mmBtu/hr, an enforceable objective numerical value, *McEvoy* addressed the enforceability of a far more nebulous regulation disallowing the emission of fugitive particulate matter "that is visible by an observer looking generally toward the zenith at a point beyond the property line of the source." *McEvoy*, 622 F.3d at 679 (quoting Ill. Admin. Code tit. 35, § 212.301).  The Seventh Circuit found that this language raised a host of questions: "What are the characteristics of the observer? Where is she standing? Must the matter be visible to the naked eye. . . ?" *Id.*  The numeric heat input value is in no way analogous.  Luminant's reliance on *Public Citizen v. American Electric Power Co.*, No. 5:05-cv-39-DF, 2006 WL 3813762 (E.D. Tex. Dec. 27, 2006) is also unavailing.  The Court in *Public Citizen* denied a motion for summary judgment because it found that the permit's failure to include "shall not exceed" language in connection with the alleged heat input limitation created a genuine issue of material fact—*it did not grant a motion to dismiss* for the same. *Id.* at *2.

## CONCLUSION

For the reasons set forth above and in its previously submitted briefs, Sierra Club respectfully requests that the Court deny Defendants' Motion to Dismiss with prejudice.

Dated: December 20, 2012                                    Respectfully submitted,

By:   /s/ Suma Peesapati

Suma Peesapati (admitted pro hac vice)
CA State Bar No. 203701
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA 94111-4608
Tel: (415) 217-2000
Fax: (415) 217-2040
Email: speesapati@earthjustice.org


Ilan Levin (admitted pro hac vice)
TX State Bar No. 00798328
ENVIRONMENTAL INTEGRITY
PROJECT
1303 San Antonio Street, Suite 200
Austin, TX 78701
Tel: (512) 637-9479
Fax: (512) 584-8019
Email: ilevin@environmentalintegrity.org

**COUNSEL FOR PLAINTIFF**

**LIST OF EXHIBITS**

Exhibit 1   Excerpt from Cover Letter and Application for Amendment to Permit No. 933 for Incorporation of Planned MSS Activities (Nov. 3, 2010)

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this the 20th day of December, the foregoing document and associated exhibit were filed electronically in compliance with Local Rule CV-5(a). All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by regular mail.

/s/ *Suma Peesapati*

Suma Peesapati