**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:10-cv-00156-MHS-CMC |
| ENERGY FUTURE HOLDINGS | ) | |
| CORP. and LUMINANT | ) | |
| GENERATION COMPANY LLC, | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**BRIEF ON ISSUE PRECLUSION**
**AND RELATED MOTION FOR SUMMARY JUDGMENT**
**BY DEFENDANTS ENERGY FUTURE HOLDINGS CORP.**
**AND LUMINANT GENERATION COMPANY LLC**

---

April 28, 2014

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ................................................................... 1

BACKGROUND ................................................................... 5

I.     Posture of this Case ................................................................... 5

II.    Relevant Determinations in the Big Brown Case ................................................................... 6

    A.    Sierra Club Must Establish Causation on the Merits ................................................................... 6

    B.    The Clean Air Act's Jurisdictional Bar Prohibits Sierra Club from Obtaining Relief on Any Claim that Is Inconsistent with the Title V Permit ......... 7

    C.    The Affirmative Defenses Apply, and TCEQ's Determinations that the Defenses Are Satisfied are Entitled to Judicial Deference ...................................... 9

    D.    Sierra Club Has an Adequate Remedy at Law for Its Complaints about Excess Opacity ................................................................... 10

    E.    A Challenge to Excess Opacity during MSS Events Is Rendered Moot by the Issuance of an Amended MSS Permit and the Submission of an Application for a Minor Revision to a Title V Permit ........................................... 11

APPLICABLE LEGAL STANDARDS ................................................................... 12

ARGUMENT ................................................................... 14

I.     Certain Common Issues Have Already Been Litigated by the Parties in the Big Brown Case, and Their Resolution Warrants Entry of Judgment in Favor of Defendants in this Case, Too. ................................................................... 14

    A.    Sierra Club Cannot Establish Causation ................................................................... 14

    B.    Sierra Club's Heat Input Claim Is an Impermissible Collateral Attack on Martin Lake's Title V Permit ................................................................... 16

    C.    The Affirmative Defenses Apply, and TCEQ's Determinations that the Affirmative Defenses are Satisfied are Entitled to Deference ............................... 18

    D.    Sierra Club Cannot Obtain Injunctive Relief on Its Opacity Claim ...................... 21

      E.      The Portion of Sierra Club's Opacity Claim that Challenges Excess Opacity during MSS Events Has Been Rendered Moot ........................................22

II.     Alternatively, Judge Smith's Findings and Conclusions Substantially Narrow the Scope of the Issues to be Tried In this Case .....................................................................24

**CONCLUSION** ........................................................................................................................26

**EXHIBIT LIST** ......................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ameranth, Inc. v. Par Tech. Corp.,*
  No. 2:10-cv-294, 2011 WL 4370539 (E.D. Tex. Aug. 16, 2011)...........................................13

*Am. Furniture Co., Inc. v. Int'l Accommodations Supply,*
  721 F.2d 478 (5th Cir. 1981) .......................................................................................... 1

*Ashe v. Swenson,*
  397 U.S. 436 (1970).........................................................................................................12

*Auer v. Robbins,*
  519 U.S. 452 (1997).........................................................................................................17

*Beacon Theatres, Inc. v. Westover,*
  359 U.S. 500 (1959).........................................................................................................22

*Bradberry v. Jefferson Cnty., Tex.,*
  732 F.3d 540 (5th Cir. 2013) ..........................................................................................13

*Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.,*
  448 F.3d 825 (5th Cir. 2006) ..........................................................................................12

*Idaho v. Coeur d'Alene Tribe of Idaho,*
  521 U.S. 261 (1997).........................................................................................................22

*In re Sims,*
  479 B.R. 415 (Bankr. S.D. Tex. 2012) ............................................................................13

*Indep. Nursing Home v. Simmons,*
  732 F. Supp. 684 (D. Miss. 1990)............................................................................. 17-18

*La Croix v. Marshall County, Mississippi,*
  409 F. App'x 794 (5th Cir. 2011) .....................................................................................1

*Lewis v. S.S. Baune,*
  534 F.2d 1115 (5th Cir. 1976) .........................................................................................22

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
  760 F.2d 618 (5th Cir. 1985) ..........................................................................................22

*Ogden Projects, Inc. v. New Morgan Landfill Co.,*
  911 F. Supp. 863 (E.D. Pa. 1996) ...................................................................................17

*RecoverEdge L.P. v. Pentecost*,
    44 F.3d 1284 (5th Cir. 1995) ............................................................ 12-13

*Satterfield v. J.M. Huber Corp.*,
    888 F. Supp. 1561 (N.D. Ga. 1994) .........................................................20

*Scott v. Ford Bend County*,
    870 F.2d 165 (5th Cir. 1989) .................................................................13

*Sierra Club v. Otter Tail Power Co.*,
    615 F.3d 1008 (8th Cir. 2010) .................................................................7

*Stockton v. Altman*,
    432 F.2d 946 (5th Cir. 1970) .................................................................22

*United States v. Alcoa, Inc.*,
    No 1:03-cv-222, 2007 WL 5272187 (W.D. Tex. Mar. 14, 2007) ...................... 17-18

*United States v. Cemex, Inc.*,
    864 F. Supp. 2d 1040 (D. Colo. 2012) .........................................................7

*United States v. Stauffer Chem. Co.*,
    464 U.S. 165 (1984) ............................................................................12

*Virginia v. Browner*,
    80 F.3d 869 (4th Cir. 1996) ....................................................................7

**Statutes**

42 U.S.C. § 7604(a)(1) .......................................................................20

42 U.S.C. § 7606(b)(2) .........................................................................8

42 U.S.C. § 7607(b)(1) .........................................................................7

42 U.S.C. § 7661c(a) ...........................................................................7

42 U.S.C. § 7661c(b) ...........................................................................7

42 U.S.C. § 7661d(a)(1) ........................................................................7

42 U.S.C. § 7661d(b)(2) ........................................................................7

42 U.S.C. § 7661d(b)(3) ........................................................................7

42 U.S.C. § 7661d(c) ...........................................................................7

**Rules of Procedure**

Fed. R. Civ. P. 56(a) .................................................................................................................13

**Regulatory Materials**

30 Tex. Admin. Code § 101.222(d) ............................................................................................20

30 Tex. Admin. Code § 101.222(e) ............................................................................................20

30 Tex. Admin. Code § 122.217 .................................................................................................12

## INTRODUCTION

The factual and legal issues on which this case turns were decided against Sierra Club in the Big Brown case.[1]  The doctrine of issue preclusion bars Sierra Club from relitigating in this case issues and claims that were rejected in the Big Brown case.  Taken together, the recent Big Brown ruling, the summary-judgment briefing that is already before the Court, and the evidence in the summary-judgment record establish that no triable issues remain in this case.  The Court can and should end this case without the time and expense of a second trial.  Accordingly, pursuant to Rule 56, Defendants respectfully move the Court to enter summary judgment in their favor on both counts of Sierra Club's complaint and dismiss this case with prejudice.[2]

Specifically, the following five issues were decided in the Big Brown case in such a way as to warrant judgment in favor of Defendants in this case as well.  As set forth below, each of these issues provides a separate, independent basis for judgment in favor of Defendants on one or more of Sierra Club's claims for relief.

---

[1]  *Sierra Club v. Energy Future Holdings Corp. and Luminant Generation Company LLC*, No. 6:12-cv-00108-WSS (W.D. Tex.).

[2]  Defendants have endeavored to keep the Court apprised of the status of the related Big Brown matter and to timely advise the Court of the rulings in the case and their potential impact on the present case.  *See* Doc. 245 at 2.  Thus, Sierra Club can claim no surprise or prejudice in the timing of the Court's consideration of the preclusive effect of the Big Brown rulings.  Further, as discussed herein, all of the relevant facts are contained in the record before the Court, and Sierra Club had ample opportunity to file evidentiary materials as part of that record.  Thus, the Court may properly rule on the application of issue preclusion principles to the claims in this case without further pleadings.  *See Am. Furniture Co., Inc. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. 1981) (holding that, even though res judicata was not pled in answer, "where all the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to dispositive facts. . . . We do so *sua sponte*."); *see also La Croix v. Marshall County, Mississippi*, 409 F. App'x 794, 798-99 (5th Cir. 2011) (holding that district court properly ruled on res judicata issue, even though not pled in answer, because "the defense was not available to [defendants] when they filed their answer because the [other judgment] had not yet become final" and "the district court invited briefing from both parties on res judicata before it dismissed any claims as precluded").  To the extent the Court deems it necessary that Defendants' Answer include the affirmative defense of issue preclusion in order for the Court to dismiss the case on that basis, Defendants are filing a motion to amend their Answer to specifically include that defense.

(1)    **Causation**.  Sierra Club contends in this case that it may sue Defendants even though it cannot establish that the emissions events on which it bases its claims caused any harm to any Sierra Club member, arguing instead—as it did in Big Brown—that it is not required to prove causation. But the Big Brown decision establishes as a matter of law that causation on the merits is an element of a cause of action under the Clean Air Act's citizen-suit provision.  Sierra Club may not relitigate that issue here.  In this case, Sierra Club's evidence does not meet the causation standards established in the Big Brown case.  Sierra Club's inability to prove causation warrants judgment in Defendants' favor on **both counts** of the complaint as a matter of law.

(2)    **Heat Input**.  Sierra Club asks the Court to hold Defendants liable for violating an alleged heat-input limit that appears nowhere in Martin Lake's Title V federal operating permit, just as it asked the Court in Big Brown to enforce an alleged limit on particulate matter that conflicted with the terms of Big Brown's Title V permit.  Twice in the Big Brown case, Judge Smith held that the Clean Air Act's jurisdictional bar prohibits a citizen-suit plaintiff from obtaining relief on a claim that is inconsistent with terms of the Title V permit.  Sierra Club is precluded from relitigating that issue in this case.  In November 2013, the Texas Commission on Environmental Quality ("TCEQ") definitively confirmed that Martin Lake's Title V permit does not contain a heat-input limit.   The absence of a heat-input limit in the Title V permit means Sierra Club's heat-input claim is inconsistent with the permit and that Defendants' are entitled to judgment on Sierra Club's **Count Two (Heat Input)**.  Defendants are also entitled to summary judgment on Sierra Club's heat-input claim for the additional reasons outlined in their pending motion for partial summary judgment. *See* Doc. 129.

(3)    **Affirmative Defense to Opacity Claim**.  Sierra Club asks this Court to substitute Sierra Club's judgment in the place of TCEQ's judgment on the question of whether the opacity

2

events at issue satisfy the affirmative defenses in 30 Texas Administrative Code § 101.222. Sierra Club made this same request to the Big Brown court.  That court denied it, and Sierra Club may not relitigate its request here.  The Big Brown decision establishes that Defendants may rely on the affirmative defenses relating to opacity events in 30 Texas Administrative Code § 101.222 and that TCEQ's application of the affirmative defenses to specific opacity events merits judicial deference.  Sierra Club is barred from relitigating those issues before this Court.  Based on the summary-judgment record already before the Court, it is undisputed that TCEQ has determined that all of the opacity events at issue in this case (except one) satisfy the affirmative-defense criteria in § 101.222(d) or (e).  Sierra Club is barred from relitigating the question of whether these determinations are entitled to deference.  Accordingly, the TCEQ determinations warrant judgment in Defendants' favor as to **civil penalties** under Sierra Club's **Count One (Opacity)**.

(4)     **Injunctive Relief.**  Sierra Club asserts in this case that it is entitled to injunctive relief on its opacity claim even though there are procedures available by which it can obtain administrative and judicial review of amended air permits.   Judge Smith held that those procedures give Sierra Club an adequate remedy at law for its challenges to excess opacity events.   That holding has issue-preclusive effect.   Sierra Club is not entitled to recycle an argument that another federal court has already considered and rejected.  It is undisputed that those same judicial and administrative procedures are available to Sierra Club in this case and that Sierra Club has utilized them.  Because lack of an adequate remedy at law is a *sine qua non* of injunctive relief, Defendants' are entitled to judgment as to **injunctive relief** under Sierra Club's **Count One (Opacity)**.

(5)     **Mootness.**  Sierra Club asks this Court to impose civil penalties and injunctive relief on its opacity claim even though the excess opacity events it challenges are lawful,

authorized, and permitted under the terms of Martin Lake's amended air permit and revised Title V permit.  Sierra Club advanced this same position in the Big Brown case, contending that the court should give no effect to the amended and revised permits.  Judge Smith rejected that position, and Sierra Club is not entitled to a second bite at the apple.  The Big Brown decision establishes that an opacity claim becomes moot when TCEQ issues an amended air permit authorizing excess opacity during maintenance, startup, and shutdown ("MSS") activities and the permitted facility applies to incorporate the amended air permit as a minor revision to its Title V federal operating permit.  Here, TCEQ has issued an amended air permit authorizing excess opacity during MSS activities at Martin Lake, and Luminant has applied for a minor revision to Martin Lake's Title V permit.  Accordingly, the portion of Sierra Club's **Count One (Opacity)** that seeks relief based on excess opacity during MSS activities is moot.

In addition to these dispositive issues, Sierra Club is precluded from relitigating a number of non-dispositive issues of fact and law that were decided against it in the Big Brown case.  Although these additional issues are not dispositive, they would further limit the issues to be decided in the event this case proceeded to trial.[3]

---

[3]  In his post-trial findings of fact and conclusions of law, Judge Smith determined that an award to Defendants of the costs of the litigation (including reasonable attorney and expert-witness fees) was appropriate under the Clean Air Act's fee-shifting provision.  *See* Memorandum Opinion and Order at 55, *Sierra Club v. Energy Future Holdings Corporation and Luminant Generation Company LLC*, No. 6:12-cv-00108-WSS (W.D. Tex. Mar. 28, 2014), ECF No. 273 ("Big Brown Final Order").  A copy of the Big Brown Final Order is available on this Court's Docket at Doc. 218-1.    Defendants have filed a post-judgment motion seeking a determination of the proper amount of an award of fees and costs (Big Brown Doc. 275), which Sierra Club opposes; that motion remains pending.  Sierra Club has filed a motion to amend the court's determination with respect to fees and costs (Big Brown Doc. 289); that motion remains pending.  While Defendants do not seek to enforce the preclusive effect of Judge Smith's fee ruling in this filing, Defendants reserve their right to seek an award of fees and costs in this case at the appropriate time.

# BACKGROUND

## I.      Posture of this Case

Sierra Club alleges that Martin Lake has unlawfully exceeded (1) a regulatory limit on

the opacity of the Plant's emissions (Count One); and (2) an alleged hourly limitation on the

Plant's heat input (Count Two). Doc. 1 ¶¶ 34–43 (Original Complaint).  On May 1, 2012, Sierra

Club brought a comparable lawsuit against Defendants in the Western District of Texas alleging

that the Big Brown Plant had unlawfully exceeded: (1) a regulatory limit on the opacity of the

plant's emissions; and (2) a regulatory limit on the plant's total particulate matter ("PM").  The

trial schedule in this case was coordinated with the Big Brown trial schedule because the

resolution of the Big Brown case would affect this case, as all agreed.  Doc. 246 at 3.  In the Big

Brown case, the court granted Defendants' motion for summary judgment on the PM claim in

January 2014,[4] and the parties proceeded to trial on the opacity claim from February 24 to 26,

2014.  On March 28, 2014, Judge Smith issued findings of fact and conclusions of law finding in

favor of Defendants on all issues with respect to the opacity claim, denying all relief requested

by Sierra Club, and determining that an award of fees and costs to Defendants is appropriate.

*See* Big Brown Final Order (Doc. 218-1) at 55.

In accordance with this Court's scheduling order, the parties filed cross-motions for

summary judgment on October 11, 2013, jointly covering all of Sierra Club's claims.

Specifically, Sierra Club moved for partial summary judgment on its standing to bring suit,

liability on its opacity claim (Count One), and liability on its heat input claim (Count Two).

---

[4]  *See* Order, *Sierra Club v. Energy Future Holdings Corporation and Luminant Generation Company
LLC*, No. 6:12-cv-00108-WSS (W.D. Tex. Feb. 10, 2014), ECF No. 240 ("Big Brown Summary
Judgment Order").  A copy of the Big Brown Summary Judgment Order is available on this Court's
Docket at Doc. 218-3.

Doc. 130.  Defendants sought summary judgment on Sierra Club's heat input claims (Count Two).  Doc. 129.

## II.      Relevant Determinations in the Big Brown Case

### A.      Sierra Club Must Establish Causation on the Merits.

The Big Brown decision answered in the affirmative the threshold legal question of whether causation on the merits is an element of a cause of action under the Clean Air Act's citizen-suit provision.  In his order addressing Sierra Club's standing to sue, Judge Smith held that to prevail at trial Sierra Club would have to make a showing above and beyond that required by the "fairly traceable" element of Article III standing and "prove causation and explicitly link opacity violations to [its standing witness's] injuries."  *See* Big Brown Standing Order (Doc. 188-1) at 11.  Judge Smith reiterated this holding in his post-trial findings of fact and conclusions of law, explaining that citizen-suit plaintiffs "'must ultimately establish causation if they are to prevail *on the merits* of their Clean Air Act claims."  *See* Big Brown Final Order (Doc. 218-1) at 46 ¶ 49 (quoting *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 793 (5th Cir. 2000)).

The post-trial findings and conclusions further held that a Clean Air Act citizen-suit plaintiff does not carry its burden on causation by offering evidence that exposure to the emissions at issue causes an increased risk of future health problems.  "[I]n the absence of a 'presently existing injury,' the mere fact that a person has been exposed to a potentially hazardous substance is not a legally cognizable injury."  *Id.* at 47–48 ¶ 53.  As a consequence, "'the requisite element of causation is lacking until separate prospective injuries materialize.'" *Id.* (quoting *Adams v. Johns-Manville Sales Corp.*, 783 F.2d 589, 591–92 (5th Cir. 1986)).

Sierra Club ultimately was unable to carry its burden of establishing causation on the merits, and Judge Smith entered judgment for Defendants on this basis. *Id.* at 48 ¶ 54.

**B.      The Clean Air Act's Jurisdictional Bar Prohibits Sierra Club from Obtaining Relief on Any Claim that Is Inconsistent with the Title V Permit.**

The Big Brown decision also confirmed that the Clean Air Act's jurisdictional bar operates to defeat any claim that conflicts with the terms of the Title V Permit. Title V of the Clean Air Act establishes an operating-permit program under which operating permits are issued that compile all the various applicable requirements for a facility into a single, federally enforceable permit. 42 U.S.C. § 7661c(a), (b); *United States v. Cemex, Inc.*, 864 F. Supp. 2d 1040, 1045 (D. Colo. 2012). The Title V permit contains—in a single, comprehensive set of documents—*all* Clean Air Act requirements that apply to the permitted source and, as such, functions as a "source-specific bible for Clean Air Act compliance." *Virginia v. Browner*, 80 F.3d 869, 873 (4th Cir. 1996). Compliance with a "Title V permit assure[s] compliance with *all* emission limitations and other substantive CAA requirements that apply to the source." *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1012 (8th Cir. 2010) (emphasis added).

Title V also contains a jurisdictional bar that limits the scope of claims that may be brought in a citizen suit. Title V requires state permitting authorities (such as TCEQ) to submit permit applications and proposed permits to EPA for review. 42 U.S.C. § 7661d(a)(1). If EPA determines a proposed permit does not comply with the Act, EPA must object to the permit, and the permit may not issue until the objection is addressed. *Id.* § 7661d(b)(3), (c). If EPA does not object, a citizen who objects to the contents of the permit may petition EPA to object to the permit's issuance. *Id.* § 7661d(b)(2). If EPA denies the petition, § 7607(b)(1) allows the objecting citizen to obtain judicial review of EPA's decision in a federal court of appeals. This direct review of EPA's decision in a court of appeals is the exclusive remedy for a citizen who

objects to the contents of a Title V permit.  Title V's jurisdictional bar provides that "[a]ction of [EPA] with respect to which review could have been obtained" under §7607(b)(1) "shall not be subject to judicial review in civil or criminal proceedings for enforcement." *Id.* § 7606(b)(2).

In two separate rulings during the Big Brown case, Judge Smith confirmed that Title V's jurisdictional bar prohibits Sierra Club from attacking the contents of a Title V permit in a citizen suit.  First, Judge Smith determined in a pretrial ruling that Defendants were entitled to rely on the affirmative defenses for opacity events found in 30 Texas Administrative Code § 101.222 because, *inter alia*, the defenses had become federally enforceable terms of Big Brown's Title V permit as part of a minor permit revision that was finalized in 2008.[5]  Because Sierra Club could have challenged the incorporation of the defenses into Big Brown's Title V permit during the permitting process, Sierra Club was jurisdictionally barred from launching a collateral attack on their incorporation as part of a citizen suit.  *Id.*

Second, in his order granting Defendants' motion for partial summary judgment, Judge Smith determined that Sierra Club's particulate-matter ("PM") claim was an impermissible collateral attack on Big Brown's Title V permit because, at bottom, the PM claim challenged TCEQ and EPA's decision to incorporate a particular provision into Big Brown's Title V permit. *See* Big Brown Summary Judgment Order (Doc. 218-3) at 10–13.  The court concluded that the PM claim had to be dismissed because the Clean Air Act "divests district courts of jurisdiction over any claim that is the functional equivalent of a challenge to the appropriate provisions of a Title V permit that has been issued."  *Id.* at 10 (quoting *Tex. Campaign for the Env't v. Lower Colo. River Auth.*, CIV.A. H-11-791, 2012 WL 1067211 (S.D. Tex. Mar. 28, 2012)).

---

[5] *See* Order at 12–16, *Sierra Club v. Energy Future Holdings Corporation and Luminant Generation Company LLC*, No. 6:12-cv-00108-WSS (W.D. Tex. Aug. 20, 2013), ECF No. 162 ("Big Brown Affirmative Defense Order").  A copy of the Big Brown Affirmative Defense Order is available on this Court's Docket at Doc. 218-2.

**C.     The Affirmative Defenses Apply, and TCEQ's Determinations that the Defenses Are Satisfied are Entitled to Judicial Deference.**

The Big Brown decision established that the affirmative defenses for opacity events in 30 Texas Administrative Code § 101.222 apply to events that occurred during what Sierra Club likes to call the "SIP gap."   In the Big Brown case, Sierra Club took the position that the § 101.222 affirmative defenses did not apply to events that occurred between July 30, 2006 (the expiration date of a prior affirmative defense regulatory regime) and January 10, 2011 (the effective date of EPA's approval of the current affirmative defenses into Texas's State Implementation Plan ("SIP")).   Judge Smith rejected that position in a pretrial ruling, holding that the defenses were available for two separate reasons.   First (and as noted above), the defenses became applicable to Big Brown on a site-specific basis when they became federally enforceable terms of Big Brown's Title V permit as part of a minor permit revision that was finalized in 2008.  *See* Big Brown Affirmative Defense Order (Doc. 218-2) at 12–16.   Second, Judge Smith held that the affirmative defenses are the law currently in effect as to opacity events and that the court was required to apply "'the law in effect at the time it renders its decision,'" notwithstanding the fact that EPA's approval of the affirmative defenses occurred after the opacity events at issue. *Id.* at 16 (quoting *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (2006)).   EPA had not expressly prohibited retroactive application, and giving the defenses retroactive effect would not impair any existing rights or impose new duties on past conduct. Thus, the court concluded that applying the affirmative defenses to opacity events that occurred before EPA's approval of the defenses would not produce an impermissible retroactive effect. *Id.* at 17–19 (citing *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994)).

The Big Brown decision further established that where TCEQ has applied § 101.222 to a particular opacity event and determined that the event satisfies the affirmative-defense criteria,

9

that regulatory determination is entitled to judicial deference.  For the opacity events at issue in the Big Brown case, the TCEQ had found that the events satisfied the affirmative-defense criteria.  In his post-trial findings of fact and conclusions of law, Judge Smith explained that "a district court reviews the actions of a state agency administering federal programs as it would review the actions of a federal agency, including deference to reasoned administrative action" and that "[t]his deference extends to an agency's application of its own regulations to a set of facts."  *See* Big Brown Final Order (Doc. 218-1) at 27 ¶ 7.  "Courts are at their most deferential in reviewing the agency's findings where an agency's particular technical expertise is involved," *id.* at 27 ¶ 8, and Judge Smith found that TCEQ's determinations concerning the application of the § 101.222 affirmative defenses to particular opacity events "fall squarely within the TCEQ's sphere of expertise," "require[] the use, evaluation and assessment of scientific, technical, and operational data, and draw[] on the TCEQ's technical expertise, enforcement experience, and technical competence," *id.* at 7 ¶ 21.  As a consequence, Judge Smith concluded that TCEQ's application of and findings concerning the affirmative-defense criteria were entitled to deference. *Id.* at 26–29 § II(A).

> ### D. Sierra Club Has an Adequate Remedy at Law for Its Complaints about Excess Opacity.

The Big Brown decision also determined that the procedures available for obtaining administrative and judicial review of amended air permits give Sierra Club an adequate remedy at law for its challenges to excess opacity events.  In December 2011, TCEQ issued an amended air permit for the Big Brown plant.  The amended permit authorizes opacity in excess of 20% during MSS activities at the plant.  The amended permit allowed anyone who objected to its issuance to pursue either of two remedies at law: filing an administrative challenge with TCEQ or seeking judicial review in Travis County District Court.  Sierra Club availed itself of both of

these legal remedies, initiating both an administrative and a state-court proceeding in January 2012.  TCEQ denied Sierra Club's administrative challenge, and Sierra Club made the tactical decision to voluntarily dismiss its state-court lawsuit with prejudice.  *See Big Brown Final Order* at 23–24 ¶ 64.

In his post-trial findings and conclusions, Judge Smith determined that the availability of both administrative and judicial review of the amended permit and Sierra Club's decision to utilize those review procedures gave Sierra Club an adequate remedy at law for whatever complaints it had about excess opacity at Big Brown.  *Id.* at 45 ¶ 45.   The court relied on this finding in determining that injunctive relief was not warranted.  *Id.*

E.   **A Challenge to Excess Opacity during MSS Events Is Rendered Moot by the Issuance of an Amended MSS Permit and the Submission of an Application for a Minor Revision to a Title V Permit.**

Finally, the Big Brown decision also established that an opacity claim becomes moot when TCEQ issues an amended air permit authorizing excess opacity during MSS activities and the permitted facility applies to incorporate the amended air permit as a minor revision to its Title V permit (as has been done for both Big Brown and Martin Lake).  In December 2011, TCEQ amended Big Brown's air permit to authorize and regulate opacity in excess of 20% during MSS activities so long as the plant is operated in compliance with specified duration and work-practice requirements.  Luminant submitted its amended air permit as a minor revision to incorporate the permit's MSS provisions into Big Brown's federal Title V operating permit.

None of these facts was disputed.  Instead, the dispute centered on whether Big Brown's amended air permit was enforceable as a matter of federal law and, if so, its impact on the viability of Sierra Club's opacity claim.  Judge Smith held that the amended air permit's MSS provisions became enforceable as a matter of federal law when Luminant submitted the changes as a minor revision to Big Brown's Title V permit. *See Big Brown Final Order* (Doc. 218-1) at

11

42 ¶ 37.  Under EPA-approved, federally enforceable regulations, Luminant's submission of the minor-revision application caused the amended air permit's MSS provisions to be incorporated as provisional, federally enforceable terms and conditions of the Title V permit effective immediately upon submission.  *See* 30 Tex. Admin. Code § 122.217.

As a consequence, the court concluded that upon submission of the minor revision Big Brown's Title V permit authorized and permitted the MSS-related opacity exceedances at issue in that case, and the portion of Sierra Club's opacity claim challenging MSS-related opacity had been rendered moot.  The court explained that "it has long been settled that '[a] case seeking injunctive relief based on conduct that has become lawful due to a change in the law is rendered moot by the change in law.'"  Big Brown Final Order (Doc. 218-1) at 53 ¶ 68 (quoting *Sierra Club v. TVA*, 592 F. Supp. 2d 1357, 1376-77 (N.D. Ala. 2009)).  Likewise, the Court concluded, "[o]nce a Title V permit is issued, an civil action seeking civil penalties for conduct allowed by the permit becomes moot."  *Id.* at 54 ¶ 70.

## APPLICABLE LEGAL STANDARDS

The doctrine of issue preclusion provides that when an issue of fact or law has been fully and fairly litigated by two parties and conclusively determined by a final judgment, "that issue cannot again be litigated between the same parties in any future lawsuit."  *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see also United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170–71 (1984); *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 829 (5th Cir. 2006).  The doctrine has "three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action."  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th

Cir. 1995).

Issue preclusion attaches once an issue has been fully litigated and actually decided; it is not affected by the pendency of an appeal or post-judgment motions.  *See, e.g.*, *In re Sims*, 479 B.R. 415, 421–22 (Bankr. S.D. Tex. 2012) ("The Fifth Circuit has established that, for purposes of collateral estoppel, a judgment may be final even though an appeal is pending or a lower court has yet to fully dispose of the matter from which the issue arises." (citing *Prager v. El Paso Nat. Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969))); *Ameranth, Inc. v. Par Tech. Corp.*, No. 2:10-cv-294, 2011 WL 4370539, at *2 (E.D. Tex. Aug. 16, 2011) ("[U]nder Fifth Circuit law, 'judgments are final for purposes of issue preclusion when fully litigated, even if not yet appealable.'" (quoting *Cycles v. Navistar Fin. Corp.*, 37 F.3d 1088, 190 (5th Cir. 1994))).  Difficult questions relating to the operation and scope of issue preclusion sometime arise in cases where a party seeks a non-mutual application of the doctrine (whether offensive or defensive).  *See, e.g.*, *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 548–49 (5th Cir. 2013).  The doctrine's operation is most certain, and its scope broadest, where, as here, preclusion arises in a later lawsuit **between the same parties**.  *See id.*

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A defendant is entitled to summary judgment where the doctrine of issue preclusion requires that the plaintiff's claims be dismissed.  *See*, *e.g.*, *Scott v. Fort Bend County*, 870 F.2d 165, 168 (5th Cir. 1989) (affirming summary judgment where district court found claims to be covered by issue preclusion).

## <u>ARGUMENT</u>

Judgment in favor of Defendants is warranted on both counts of Sierra Club's Complaint because Sierra Club is precluded from relitigating certain dispositive issues already resolved by Judge Smith in the parallel Big Brown case.   Specifically, Sierra Club is precluded from relitgating:  (1) Sierra Club's burden to prove causation apart from its Article III standing; (2) the inapplicability of standards to Martin Lake, such as heat input limits, outside the terms of Martin Lake's Title V permit in light of the statute's jurisdictional bar (3) the applicability of the affirmative defenses to the opacity events in light of TCEQ's authoritative determinations; (4) the unavailability of injunctive relief for Sierra Club's opacity claims in light of other available legal remedies;  and (5) that Luminant's current Title V permit, which authorizes and permits the same type of MSS exceedances at issue here, moots Sierra Club's opacity claim.  Each of these precluded issues, *when applied to the summary judgment record already before this Court*, warrants final judgment in favor of Defendants.[6]

Furthermore, there are a number of additional non-dispositive issues of fact and law that are contested in this case that Sierra Club is precluded from challenging here.  Although these additional issues are not dispositive, they would further limit the issues to be addressed in any trial in this case in the event any claim remains to be litigated.

**I.     Certain Common Issues Have Already Been Litigated by the Parties in the Big Brown Case, and Their Resolution Warrants Entry of Judgment in Favor of Defendants in this Case, Too.**

**A.     Sierra Club Cannot Establish Causation**

The Big Brown decision establishes that Sierra Club must prove causation on the merits.

Judge Smith's decision of this issue satisfies all three elements of issue preclusion:

---

[6] Defendants' summary judgment motion on Sierra Club's heat input claim, on its own, warrants dismissal of the heat input claim.  *See* Doc. 129.

- The issue is identical: Whether causation on the merits is an element of a cause of action under the Clean Air Act's citizen-suit provision is a question of statutory interpretation that applies with equal force in all Clean Air Act citizen suits. The parties identified causation as a disputed issue of law in the joint proposed pretrial order. *See* Doc. 209 at 19.

- It was actually litigated: In the Big Brown case, the parties briefed the issue in connection with Sierra Club's motion for partial summary judgment.[7] Both sides' proposed findings and conclusions addressed causation.[8] And Sierra Club filed a trial brief on the issue.[9]

- It was necessary to the judgment: Judge Smith addressed causation in paragraphs 49 through 54 of his post-trial conclusions of law, *see* Big Brown Final Order (Doc. 218-1) at 46–48, and he identified Sierra Club's failure to establish causation as "an independent and additional reason" why Sierra Club had "failed to demonstrate its entitlement to any relief," *id.* at 46 ¶ 49.

Thus, Sierra Club is precluded from relitigating the question of whether the Clean Air Act requires proof of causation on the merits.

The need to establish causation on the merits is fatal to both of Sierra Club's claims. Sierra Club has effectively conceded it cannot prove causation in this case. Defendants argued the causation issue in their response to Sierra Club's motion for partial summary judgment. *See* Doc. 152 at 18. In reply, Sierra Club did not even attempt to argue that it can establish causation on the merits. *See* Doc. 177 at 8–9. In both its trial brief on causation and its proposed findings of fact and conclusions of law, Sierra Club continues to insist that proof of causation is not required, and it points to no evidence that will enable it to prove causation. *See* Doc. 211 at 1–4; Doc 227 at 17–19 ¶¶ 26–29. Sierra Club claims it will offer evidence of an increased "risk to public health," *id.* at 24 ¶ 44, but this evidence would be irrelevant to the causation inquiry because of the preclusive effect of Judge Smith's ruling that increased risk of future harm is

---

[7] Big Brown Docs. 86 at 19, 103 at 12, and 114 at 1–2. Citations to "Big Brown Doc. ##" refer to documents in the Big Brown case docket available at https://ecf.txwd.uscourts.gov/cgi-bin/DktRpt.pl?11985722582052-L_1_1-1.

[8] Big Brown Doc. 220 at 20; Big Brown Doc. 225-2 (under seal in the Big Brown case, thus filed under seal herewith as Exhibit 1) at 37–38.

[9] Big Brown Doc. 256 at 1–4.

insufficient as a matter of law to establish causation.  *See* Big Brown Final Order (Doc. 218-1) at 47–48 ¶ 53.[10]

In fact, Sierra Club's causation evidence in this case is even weaker than the evidence Judge Smith found to be insufficient in the Big Brown case.  Sierra Club has come forward with no expert testimony or other testimony on causation.  Sierra Club has failed to designate *any experts* to establish causation, not even the (ultimately ineffective) experts it designated in Big Brown on this issue.  *See* Sierra Club's Witness List (Doc. 213).  In short, Sierra Club has come forward with no evidence it could offer at trial to satisfy the causation requirement.  Sierra Club's failure to prove causation warrants judgment in Defendants' favor on both counts of Sierra Club's Complaint.

**B.     Sierra Club's Heat Input Claim Is an Impermissible Collateral Attack on Martin Lake's Title V Permit.**

The Big Brown decision also establishes that the Clean Air Act's jurisdictional bar prohibits Sierra Club raising a challenge in a citizen suit to the contents of a Title V permit.  Judge Smith's decision of this issue satisfies the three elements of issue preclusion.

- The issue is identical: Whether 42 U.S.C. § 7607(b)(2) bars citizen-suit plaintiffs from challenging the terms of Title V permits is a question of statutory interpretation that applies with equal force in all Clean Air Act citizen suits.  The parties identified the applicability of the jurisdictional bar as a disputed issue of law in the joint proposed pretrial order.  *See* Doc. 209 at 20; *see also id.* at 5.

- It was actually litigated: In the Big Brown case, the parties briefed this issue in connection with the Court's order requesting supplemental briefing on the

---

[10]   Furthermore, in connection with their summary-judgment briefing Defendants produced a declaration from Robert J. Paine, one of their designated experts, explaining that the opacity events alleged by Sierra Club in the Complaint for the period July 2006–April 2008 would not have impacted the federal air quality standards or presented a health threat.  *See* Doc. 152-3 ¶ 12.  Sierra Club offered no rebuttal evidence in response.  After the Big Brown trial, Sierra Club recognized its fatal error in failing to respond and attempted to put before this Court health-impact causation evidence in the form of two declarations from witnesses who were not designated by Sierra Club in this case attached to an untimely supplemental report of its engineering expert, Dr. Sahu.  Defendants have moved to exclude this untimely evidence.  Doc. 214

applicability of the affirmative defenses in 30 Texas Administrative Code § 101.222,[11] and in connection with Defendants' motion for partial summary judgment.[12]

- It was necessary to the judgment: Judge Smith's holding that the affirmative defenses were available was an essential prerequisite to his conclusion that Defendants had proven the affirmative defenses were satisfied. *See* Big Brown Final Order (Doc. 218-1) at 25–26 ¶¶ 3–4; *id.* 26–41 ¶¶ 5–34. And the jurisdictional bar was the sole basis for the Court's decision to grant summary judgment on the PM claim. *See* Big Brown Summary Judgment Order (Doc. 218-3) at 10–18.

Sierra Club's inability to mount a collateral attack on the contents of Martin Lake's Title V permit entitles Defendants to summary judgment on the heat-input claim. In November 2013, TCEQ definitively confirmed that Martin Lake's Title V permit does not contain a heat-input limit. In a Response to Public Comment ("RTC") issued in connection with the renewal of Martin Lake's Title V permit, TCEQ explained in no uncertain terms that:

- TCEQ "does not agree that the 8,530 MMBtu/hr heat input rate is an hourly limit on [] heat input" or "that operation above that level during one or more hours is in violation of [Martin Lake's] operating permits." *See* RTC at 6 (Doc. 175-1 at 13);[13]

- "The permit record shows that the heat input of 8,530 MMBtu/hr . . . was not represented as a not-to-exceed limit." *Id.* at 7 (Doc. 175-1 at 14);

- "TCEQ agree[s] . . . that heat input is not itself an enforceable, independent limit." *Id.* at 8 (Doc. 175-1 at 15).

Under the Clean Air Act, Congress has delegated to "individual state agencies" such as TCEQ the discretionary authority to "set[] the terms and conditions of CAA permits." *Ogden Projects, Inc. v. New Morgan Landfill Co.*, 911 F. Supp. 863, 867 (E.D. Pa. 1996). Thus, TCEQ's interpretation of the contents and scope of Martin Lake's Title V permit is "controlling." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). *See generally Indep. Nursing Home v. Simmons*, 732 F.

---

[11] Big Brown Docs. 122, 125, 126, 135, & 136.

[12] Big Brown Docs. 172, 195, & 198.

[13] The version of the RTC Defendants filed with the Court (Doc. 175-1) includes cover letters and other materials in addition to the RTC itself (which begins on page 8 of the PACER filing).

Supp. 684, 688 (D. Miss. 1990); *United States v. Alcoa, Inc.*, No 1:03-cv-222, 2007 WL 5272187, at *7 (W.D. Tex. Mar. 14, 2007), *aff'd*, 533 F.3d 278 (5th Cir. 2008).

To prevail on its heat-input claim, Sierra Club would have to convince the Court to write a new provision—specifically, an hourly heat-input limit—into Martin Lake's Title V permit. But the Big Brown decision establishes that challenges to the contents of a Title V permit must be raised during the permitting process and are not cognizable in citizen suits. In Big Brown, Sierra Club argued that "the affirmative defenses should never have been included in the permit and should not be applied in this lawsuit." Big Brown Affirmative Defense Order (Doc. 218-2) at 13. In this case, Sierra Club argues that a heat-input limit should have been included in the permit and should be applied in this lawsuit. In both cases, the underlying question is the same: Can Sierra Club can obtain relief in a citizen suit on a claim that conflicts with the terms of a Title V permit? Judge Smith's rulings in the Big Brown case answered that question in the negative. Sierra Club is precluded from relitigating that same question before this Court. The absence of a heat-input limit in Martin Lake's Title V permit warrants judgment in favor of Defendants on Sierra Club's heat-input claim (Count Two). And Defendants' pending summary judgment motion (Doc. 129) provides further details and reasons supporting the dismissal of Sierra Club's heat-input claim.

### C. The Affirmative Defenses Apply, and TCEQ's Determinations that the Affirmative Defenses Are Satisfied Are Entitled to Deference.

The Big Brown decision also establishes that Defendants may rely on the affirmative defenses in 30 Texas Administrative Code §101.222 and that TCEQ's specific applications of those defenses are entitled to judicial deference. This holding, too, satisfies the three elements of issue preclusion:

- The issue is identical: Whether the affirmative defenses in § 101.222 apply to opacity events that occurred before EPA approved the defenses and whether TCEQ's

application of those defenses is entitled to deference are pure questions of law whose answers are equally applicable in all citizen suits in Texas.  The parties identified the defenses' applicability and the need for deference as disputed issues of law in the joint proposed pretrial order.  *See* Doc. 209 at 20.

- <u>It was actually litigated</u>: The parties briefed the applicability of the affirmative defenses in response to an order in Big Brown requesting supplemental briefing on the question, which Judge Smith addressed in a 20-page order.[14]  The parties briefed the issue of deference to TCEQ in connection with Sierra Club's motion for summary judgment on liability,[15] both sides submitted trial briefs on the issue,[16] and it was the subject of witness testimony at trial.[17]

- <u>It was necessary to the judgment</u>: Judge Smith's holding that the affirmative defenses were applicable and available was an essential prerequisite to his conclusion that Defendants had proven the affirmative defenses were satisfied.  *See* Big Brown Final Order (Doc. 218-1) at 25–26 ¶¶ 3–4.  And Judge Smith's decision to defer to TCEQ was an independently sufficient basis for his determination that the affirmative defenses were satisfied. *Id.* at 6–7 ¶¶ 18–21, 17 ¶ 46, 26–29 ¶¶ 5–13.

Judge Smith's determinations of these two issues apply with full force in this case.  As in Big Brown, the affirmative defenses in § 101.222 become federally enforceable terms of Martin Lake's Title V permit as part of a minor revision (finalized in 2007 for Martin Lake), *see* Exhibit 2 at Page 3, and the defenses are currently effective law whose application would produce no impermissible retroactive effect.  Accordingly, both of the reasons for the defenses' applicability that were present in the Big Brown case are also present in this case.  Similarly, Judge Smith's decision establishes that TCEQ's regulatory determinations that specific opacity events satisfy the affirmative-defense criteria are the type of agency action to which courts should defer.  TCEQ issued the exact same kind of opacity-event reports in this case that it issued in the Big Brown case.  Judge Smith's rulings thus establish all the necessary legal predicates for the application of the § 101.222 affirmative defenses in this case.

---

[14] Big Brown Docs. 122, 125, 126, 135, & 136.

[15] *See* Big Brown Doc. 122 at 11-13; Big Brown Doc. 103 at 6-8; Big Brown Doc. 114 at 5-6, 7.

[16] *See* Big Brown Doc. 253 at 3-5; Big Brown Doc. 257 at 1-2.

[17] *See, e.g.*, Big Brown Doc. 271 (Trial Transcript, which is not publicly available and thus is filed under seal herewith as Exhibit 3) at 184:3–187:14.

The summary-judgment record already before the Court establishes that there is no genuine dispute as to any of the necessary factual predicates to application of the § 101.222 defenses.   In responding to Sierra Club's motion for partial summary judgment, Defendants submitted to this Court certified copies of TCEQ reports covering all of the opacity events at issue in this case and sworn testimony of a TCEQ official with knowledge of those reports and TCEQ's findings.  *See* Docs. 152-5 through 152-53.  The reports conclusively establish TCEQ's findings and determinations that all of the opacity events at issue in this case (except one) satisfy the criteria for at least one of the affirmative defenses in § 101.222(d) or (e).[18]   These reports are the same type of agency reports submitted that Judge Smith determined to be entitled to judicial deference.   The Big Brown decision thus precludes Sierra Club from denying that the Court should give controlling weight to TCEQ's determinations that the opacity events at issue in this case satisfy the § 101.222 affirmative defenses.   The defenses bar Sierra Club from obtaining any form of relief on its opacity claim except an injunction (which it cannot obtain for the other reasons set forth in this motion).   *See* 30 Tex. Admin. Code § 101.222(d) & (e).   Accordingly, TCEQ's determinations that the affirmative defenses are satisfied warrant judgment in Defendants' favor on Sierra Club's request for civil penalties on its opacity claim (Count One).

---

[18] The one reported opacity event in this case that TCEQ determined to be a violation cannot support Sierra Club's Count I.  This single event occurred on October 29, 2007.  *See* Doc. 152-4 at 6-7 ¶ 15.  The event resulted from a one-time contractor error that was addressed and corrected.  Because human error was involved, TCEQ determined that the defense criteria were not met, and it took enforcement action, including the issuance of a written Notice of Violation requiring corrective action.  *Id.*  Because this was a one-time violation that has not "been repeated," Sierra Club cannot sue over it in this citizen suit. *See* 42 U.S.C. § 7604(a)(1) (allowing suits over past violations only where "there is evidence that the alleged violation has been repeated"); *see also Satterfield v. J.M. Huber Corp.*, 888 F. Supp. 1561 (N.D. Ga. 1994) (dismissing Clean Air Act citizen suit because alleged violation had not been repeated—"the requirement that the violation be repeated indicates that the court will not allow citizens to file suits based on violations that have been corrected. The Clean Air Act citizen suit provision is not intended to be a windfall for plaintiffs."). Because Sierra Club has offered no evidence that events of this nature have recurred at Martin Lake, it cannot obtain relief based on this single, isolated event.

**D.      Sierra Club Cannot Obtain Injunctive Relief on Its Opacity Claim.**

The Big Brown decision establishes that Sierra Club has an adequate remedy at law for its complaints about excess opacity.   Here again, Judge Smith's determination of this issue satisfies the three prerequisites to the application of issue preclusion:

- The issue is identical: TCEQ utilizes the same legal and administrative procedures in connection with the issuance of all amended air permits.  Whether those procedures provide an adequate remedy at law for complaints about the issuance of permits and the regulatory treatment of opacity is a pure question of law whose answer is equally applicable in all citizen suits in Texas.

- It was actually litigated: The parties litigated this issue in the Big Brown case in connection with Defendants' motion to dismiss,[19] and witnesses offered testimony at trial about the legal remedies available to Sierra Club on its challenges to opacity events and Sierra Club's tactical decision to dismiss its state-court lawsuit on this issue.[20]

- It was necessary to the judgment: Judge Smith made findings about Sierra Club's administrative and judicial challenges to Big Brown's amended MSS permit, *see* Big Brown Final Order at 23–24 ¶ 64, and he relied on the adequacy of the legal remedies available to Sierra Club in denying Sierra Club's request for injunctive relief, *id,*. at 45 ¶ 45.

The determination in the Big Brown case that the procedures available for obtaining administrative and judicial review of amended air permits give Sierra Club an adequate remedy at law for its challenges to excess opacity events applies with equal force in this case.   TCEQ issued Martin Lake's amended air permit on the same day it issued Big Brown's.  Doc. 72-4. Both permits authorize opacity above 20% during MSS activities.  *Id.*  Sierra Club filed identical administrative challenges to the permits, and the challenges were filed on the same day.  *See* Doc. 79-1.   TCEQ rejected both of Sierra Club's administrative challenges in the same order. *See id.*  And Sierra Club sought judicial review of the two permits in the same proceeding in Travis County District Court.  *See* Big Brown Doc. 12 at 85-103 (Exh. 2 to Defendants' Motion

---

[19] *See*, *e.g.*, Big Brown Docs. 11 at 11-12 & 19-20, 41 at 15-17, & 45 at 2-4.

[20] *See*, *e.g.*, Exh. 3 (Big Brown Doc. 271) at 311:22–314:20.

to Dismiss).  In short, Sierra Club had the same legal remedies available to it here—and availed itself of the same remedies—as it did in Big Brown.  Judge Smith's decision thus precludes Sierra Club from arguing that it has no adequate remedy at law on its opacity claim.

The existence of an adequate remedy at law is an absolute bar to injunctive relief.  *See Lewis v. S.S. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976) ("[T]he essential prerequisite to a permanent injunction is the unavailability of an adequate remedy at law."); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 292 (1997) (O'Connor, J., concurring) ("The inadequacy of a legal remedy is a prerequisite for equitable relief in any case."); *see also Stockton v. Altman*, 432 F.2d 946, 949 n.2 (5th Cir. 1970) ("'The necessary prerequisite to the right to maintain a suit for . . . [any] equitable remed[y] is . . . the absence of an adequate remedy at law." (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962))); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 629 n.9 (5th Cir. 1985) ("The main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy." (citation and alterations omitted)).  Because Judge Smith found, as a matter of law, that Sierra Club has an adequate remedy at law to redress its opacity claim, judgment for Defendants is warranted on Sierra Club's request for injunctive relief on its opacity claim (Count One).

> **E.      The Portion of Sierra Club's Opacity Claim that Challenges Excess Opacity during MSS Events Has Been Rendered Moot.**

Finally, the Big Brown decision establishes that Sierra Club's opacity claim is moot to the extent: (1) the claim seeks relief for excess opacity during MSS activities; (2) TCEQ has issued an amended air permit specifically authorizing and regulating excess opacity during MSS:

and (3) the permitted facility has submitted the amended air permit as a minor revision to its federal Title V operating permit.  Judge Smith's decision of this issue satisfies all three elements of issue preclusion:

- The issue is identical: TCEQ issued the same type of amended air permit authorizing opacity greater than 20% during MSS activities to both Big Brown and Martin Lake. Luminant applied for minor Title V permit revisions to incorporate both amended air permits into the Title V permits for both facilities.  In both cases, the dispositive question is what effect should be given to the amended permits and pending minor revision applications as a matter of federal law.   The parties identified the effect of the air permit amendment and minor-revision application as a disputed issue of law in the joint proposed pretrial order.  *See* Doc. 209 at 19.

- It was actually litigated: Both sides filed trial briefs addressing the significance of the amended permit and minor revision application in the Big Brown case,[21] and several of Defendants' witnesses testified on the issue at trial.[22]

- It was necessary to the judgment: Judge Smith's post-trial findings of fact and conclusions of law identified the mootness of "Sierra Club's [opacity] claim with respect to MSS events" as an alternative and independent basis for dismissal.  *See* Big Brown Final Order at 53 ¶ 67.

Judge Smith's resolution of this issue is dispositive in this case as well.  Here, as in Big Brown, the lion's share of the opacity events that Sierra Club challenges occurred during MSS activities. *See* Doc. 130, Exh. A.1–A.7.  It is undisputed that TCEQ amended Permit No. 933 in December 2011 to authorize opacity in excess of 20% during the same MSS activities that were at issue in Big Brown so long as the duration of the MSS activities remains below certain total hourly caps and the plant is operated in accordance with work-practice standards specified in the permit. *See* Doc. 72-4.  And it is undisputed that Luminant submitted the amended permit as a minor revision to Martin Lake's federal Title V operating permit and that the minor-revision application identifies revised Permit No. 933 as a provisional term and condition of the federal Title V permit.  *See* Doc. 91-10.

---

[21] Big Brown Docs. 253, 257.

[22] *See, e.g.*, Exh. 3 (Big Brown Doc. 271) at 294:19–296:15; 306:2–309:20.

These undisputed facts bring this case within the ambit of Judge Smith's holding that "because Luminant has applied for a revision of its Title V permit and identified the [amended air permit] as a provisional term and condition, Texas's EPA-approved Title V regulations make this current version of the permit federally enforceable in this case."  Big Brown Final Order (Doc. 218-1) at 42 ¶ 37.   Permit No 933 "authorizes and makes lawful the very MSS activity that Sierra Club" challenges in this case.  *See id.* at 42 ¶ 36.  It thereby renders moot the portion of Sierra Club's opacity claim (Count One) that challenges opacity events that occurred during MSS activities.  *Id.* at 53–54 ¶¶ 69–70.

## II.     Alternatively,  Judge Smith's findings and conclusions substantially narrow the scope of the issues to be tried in this case

There are a number of additional non-dispositive issues of fact and law that are contested in this case that Sierra Club is precluded from challenging again here.  Some of these legal issues overlap the issues discussed above.   Although these additional issues standing alone are not dispositive, they would further limit the issues to be addressed in any trial in this case in the event any claim remains to be litigated.  Each was actually litigated in Big Brown and was a supporting part of Judge Smith's final judgment in favor of Defendants.  Precluding Sierra Club from relitigating these issues would narrow and streamline the issues for trial.

The common factual issues Sierra Club is precluded from relitigating include:

1.  The need to periodically engage in the processes of shutting down and starting up a coal-fueled electric generating unit is an unavoidable feature of operating a coal-fueled electric generating unit that is beyond the control of the unit's owner or operator.  All coal-fueled power plants must engage in the process of unit shutdown and unit startup for unit maintenance and repair.  Doc. 273 at 10 ¶ 30.

2.  If ESPs are engaged too early in the startup process, or left engaged during shutdown, it would cause a condition known as plugging or caking due to the additional moisture in the flue gas at lower temperatures.  The moisture and ash would set-up like concrete on the ESP internals, which would impact the ESP's collection efficiency and cause higher opacity during normal operations and in the long-term.  Doc. 273 at 11 ¶ 33.

3.  Early energizing, or late de-energizing, of ESPs can lead to more serious issues, such as an explosion causing property damage or personal injury, due to sparking and carry-over of un-combusted fuel.  Doc. 273 at 12 ¶ 33.

4.  Keeping ESPs disengaged until minimum temperatures are reached and coal-firing can be verified is consistent with EPA recommendations and guidance.  Doc. 273 at 12-14 ¶¶ 35-36.

5.  PM NAAQS levels set by EPA are, as intended, protective of human health and the environment with an adequate amount of safety, including protection of sensitive populations such as children, the elderly, and people with respiratory problems.  Doc. 273 at 18 ¶¶ 49-50.

The common legal issues Sierra Club is precluded from relitigating include:

1.  The affirmative defenses for MMS and upsets are available retroactively where they were incorporated into a Title V permit.  Doc. 273 at 25 ¶ 3; Doc. 162.

2.  The affirmative defenses are available retroactively for the independent reason that the court must apply the federal law currently in effect.  Doc. 273 at 25 ¶ 3; Doc. 162.

3.  TCEQ's findings regarding the *applicability* of the affirmative defenses as well as TCEQ's *interpretation* of the defenses are entitled to deference.  Doc. 273 at 26-27 ¶¶ 6-8.

4.  Technical feasibility is not a consideration under the MSS affirmative defense criteria in § 101.222(e).  Doc. 273 at 31 ¶ 18.

5.  The affirmative defense criteria consider the current, installed equipment and do not consider new or different equipment that could be installed.  Doc. 273 at 33-34 ¶ 21.

6.  There can be no "condition of air pollution" without a violation, or a threatened violation, of the NAAQS.  Doc. 273 at 36-39 ¶¶ 25-31.

7.  Texas's EPA-approved Title V regulations make minor permit revisions federally enforceable upon submission of a revision application to TCEQ.  Doc. 273 at 42 ¶ 37.

8.  Clean Air Act plaintiffs must prove causation to demonstrate any entitlement from relief, separate and apart from any causation proof required to demonstrate Article III standing.  Doc. 273 at ¶ 49.

9.  De minimis health risks are not enough to establish causation.  Doc. 273 at 47-48 ¶¶ 52-53.

10. Citizen suit plaintiffs bear the burden of proving an award of penalties is "appropriate" under 42 U.S.C. § 7604(a) considering the penalty criteria in 42 U.S.C. § 7413(e)(1).  *See* Doc. 204 at 13 (Opinion at 9).

25

11. Penalties and injunctive relief are not available to remedy past opacity exceedances at a plant that is in compliance with its current permit.  (Doc. 273 at 53-54 ¶¶ 69-70.)

## **<u>CONCLUSION</u>**

For these reasons, Defendants respectfully request that the Court (a) grant this motion and Defendants' other pending motion for summary judgment (Doc. 129); (b) enter summary judgment and a final judgment in favor of Defendants on all claims; and (c) grant such additional and further relief to which Defendants are entitled.

Respectfully submitted,

/s/ P. Stephen Gidiere III
Counsel for Defendants

**Counsel for Defendants Energy Future Holdings Corp. and Luminant Generation Company LLC:**

**William B. Dawson**
SBN 05606300
wdawson@gibsondunn.com
**Michael L. Raiff**
SBN 00784803
mraiff@gibsondunn.com
**Russell H. Falconer**
SBN 24069695
rfalconer@gibsondunn.com
**Elizabeth M. Viney**
SBN 24073134
eviney@gibsondunn.com
2100 McKinney Avenue
Suite 1100
Dallas, Texas  75201-6912
Telephone:214.698.3100
Facsimile: 214.571.2900

**P. Stephen Gidiere III**
SBN 24077984
sgidiere@balch.com
**Thomas L. Casey, III**
tcasey@balch.com
Balch & Bingham LLP
Suite 1500
1901 Sixth Ave. North
Birmingham, Alabama 35203
Telephone:205.226.8735
Facsimile: 205.488.5694

**Otis W. Carroll, Jr.**
SBN 03895700
otiscarroll@icklaw.com
**Collin Michael Maloney**
SBN 00794219
collinmaloney@icklaw.com
Ireland Carroll & Kelley, P.C.
601 S. Broadway, Suite 500
Tyler, Texas 75703
Telephone:903.561.1600
Facsimile: 903.581.1071

**Daniel J. Kelly**
SBN 24041229
dan.kelly@energyfutureholdings.com
Associate General Counsel
Energy Future Holdings Corp.
1601 Bryan Street, 43rd Floor
Dallas, Texas 75201
Telephone:214.812.7182
Facsimile: 214.812.6075

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served by ECF on the 28th day of April, 2014, on counsel of record for Plaintiff.

/s/ P. Stephen Gidiere III
Counsel for Defendants

## CERTIFICATE OF SEALING

Defendants have filed Exhibits 1 and 3 under seal as required by paragraph 19 of the Agreed Protective Order.  Pursuant to Local Rule 5(a)(7)(A), Defendants hereby certify that the Court, through its Agreed Protective Order, has authorized the sealing of those exhibits, which contain Protected Material (as defined in the Agreed Protective Order).

/s/ P. Stephen Gidiere III
Counsel for Defendants

## <u>LIST OF EXHIBITS</u>

Exhibit 1      Excerpts from Big Brown Doc. 225-2 (Sierra Club's Proposed Findings of Fact and Conclusions of Law)*

Exhibit 2      Final Revised Permit Approval, Minor Revision, Permit No. O53 (Dec. 27, 2007)

Exhibit 3      Excerpts from Big Brown Doc. 271 (Trial Transcript)*

* Filed under seal pursuant to Agreed Protective Order (Doc. 87)